Argued at Pendleton October 30, 1923, reversed January 14, re-
hearing denied February 13, 1924.

# JAMES C. FORD *v.* J. P. SCHALL.

### (221 Pac. 1052; 222 Pac. 1094.)

Pleading—Recovery can Only be had upon Cause of Action Alleged in Complaint.

1. Recovery can only be had upon the cause of action alleged in the complaint, not upon issues without the record.

Bills and Notes—Accommodation Maker Held not Released from Liability Under Statute.

2. The joint maker of a note who is, within the knowledge of the payee, an accommodation maker who received no part of the consideration, when sued severally thereon is not released from liability by Section 7912, Or. L., declaring certain acts and circumstances shall operate to discharge a person secondarily liable on such an instrument.

Limitation of Actions—Part Payment by Joint Maker Prevents Running of Limitations Against All Makers.

3. Under Section 25, Or. L., declaring that if a payment is made on a bill of exchange, note, bond or other evidence of indebtedness "after the same shall have become due, the limitation shall commence to run from the time the last payment was made," a partial payment by a joint maker of a note, although without the knowledge or consent of his comakers, will continue the liability on the note of all the makers.

Pleading—Statute Relating to Amendments Should be Liberally Construed.

4. Section 102, Or. L., relating to amendments of pleadings, should be liberally construed in the interest of justice, where the opposing party has not been misled.

Limitation of Actions—Complaint in Action Against One Maker of Joint and Several Note Held Sufficient Pleading of Partial Payments.

5. A complaint, in an action against one of two makers of a joint and several note, which alleged the making and delivery of the note by defendant and set out the note and alleged payments by the other maker of interest within the period of time fixed by the statute of limitations and within six years prior to the action, *held* sufficient pleading of partial payments without an amendment alleging the joint making.

From Malheur:  DALTON BIGGS, Judge.

In Banc.

This action was filed against J. P. Schall for the purpose of recovering $1,500 with interest thereon from December 5, 1919, at the rate of 10 per cent per annum. The complaint avers:

"The plaintiff, by leave of court first obtained, files this, his first amended complaint, and for cause of action against the defendant herein, J. P. Schall, alleges:

"That at Ontario, Oregon, on September 5, 1913, defendant herein made, executed and delivered to the plaintiff herein his certain promissory note in words and figures, to wit:

"$1500.00.                        September 5, 1913.

"Ninety days after date I, we, or either of us, promise to pay to James C. Ford or order, Fifteen Hundred Dollars, for value received, negotiable and payable at the First National Bank of Caldwell, Idaho, in Gold Coin of the United States of America, with interest thereon from date until paid, both before and after maturity, at the rate of ten per cent per annum, and in case suit or action is instituted to collect this note, or any part thereof, I, we, or either of us, promise to pay such additional fee as the court may adjudge reasonable in such suit. Interest payable ——.

"(Signed)    WILL R. KING.
"(Signed)    J. P. SCHALL."

Then follow allegations of a number of interest payments.

The defendant filed an answer denying generally and specifically each and every allegation contained in plaintiff's complaint, except as to the execution, by himself, of the promissory note described therein, and, as a defense, invoked the statute of limitations. Defendant denies—

"That any payments whatever of either principal or interest have been made upon this promissory note

by defendant at any time, and denies that any payments of either interest or principal have been made upon said promissory note by said Will R. King within six years prior to the institution of this action; * * that said promissory note is a several note, and is herein sued upon and treated as such by plaintiff, and that no payments have been made thereon by this defendant, and that the collection of this note is barred by the statute of limitations of this state."

On September 18, 1923, the case came on for hearing before the court, sitting without a jury. The proof is to the effect that the defendant never made a payment of any kind on the note. This fact is freely admitted by the plaintiff. Evidence was introduced on behalf of the plaintiff, over objection, to the effect that payments of interest had been made upon the note by Mr. King before the expiration of the statute of limitations and within six years prior to the commencement of the action. The defendant moved to strike from the record the evidence of King's payments, which motion the court denied but afterwards allowed. At the conclusion of plaintiff's case the defendant moved for judgment in his favor on the ground that the statute of limitations had run on the note and that the testimony of record showed that the statute had not been tolled. The court withheld its ruling upon this motion until the defendant had made his case. The defendant rested without offering testimony. He then moved the court for a judgment in his favor upon the ground that the evidence showed that the statute of limitations had run, and proved that no payment had been made which would toll the statute. Then ensued the following colloquy between counsel and the court:

"The Court: While this complaint has been before the court, this has been the first time that this point has ever been presented to the court."

Counsel for plaintiff then addressed the court:

"I will ask to amend the complaint to conform to the facts proved. It doesn't vary the cause of action at all. It is just an oversight and I will just ask permission to amend the complaint to the facts proved. I will ask for permission to amend it to that effect by interlineation."

"Mr. Gallagher: What do you want to amend, and what do you want to do?

"Mr. Lees: Well, if the court is not satisfied as to the joint making of the note, by the copy set out—

"The Court: There is no question so far as the note itself shows about it being a joint and several note. The only question, Mr. Lees, is as to your election of remedy. Having sued one and not the other, having sued severally and not jointly, the question then is if you are not bound by the rules of law governing a several maker. If you treat it as a joint note, then you would have to have King in. Otherwise, you would be out of court on that basis. I would have no objection to your amending if it would make any difference in the case one way or the other. I can't see where it would make any difference in the ultimate result of this case.

"Mr. Lees: I don't think it would, inasmuch as a copy of the note is set out.

"The Court: I am going to do this: I am going to sustain the motion to strike out all the testimony covered by the motion which I previously overruled, rather than to give a verdict in this case. If there is any remedy left to you, then if this allegation is not absolutely binding on you you can look into the matter.

"Exception allowed to plaintiff."

Thereupon findings of fact and judgment were entered in favor of defendant, in effect as follows:

That the note forming the basis of this action was a joint and several promissory note of Will R. King and J. P. Schall; that a several action was com-

menced against one of the makers, J. P. Schall, the defendant in this case, but that the other maker, Will R. King, was not joined. The court found that—

"The evidence on the part of the plaintiff failed to disclose any payment made by the defendant at any time since the making of said note, and the court finds as a fact that the defendant did not make any payment upon the said promissory note at all, and that more than six years elapsed since this cause of action accrued and prior to the commencement of this action."

Based upon the colloquy hereinbefore referred to, the plaintiff, some time thereafter, but in good faith, by interlineation changed paragraph 1 of his first amended complaint to read as follows:

"That at Ontario, Oregon, on September 5, 1913, defendant herein and Will R. King made, executed and delivered to the plaintiff herein their certain promissory note, in words and figures as follows, to wit":

As will be noted by comparison, the only alteration made in the complaint was in adding the words "and Will R. King," and substituting the word "their" for "his."

Counsel challenge the authority of the plaintiff to change the language of his complaint.

The plaintiff appeals to this court, assigning error of the court in finding that this action is barred by the statute of limitations and that the payments made by King did not toll the statute as to the defendant Schall; in striking from the record the testimony relating to the payment of interest by King, and in refusing to set aside its finding and adopt others proposed by the plaintiff.          REVERSED.

For appellant there was a brief over the names of *Mr. R. W. Swagler* and *Mr. Wm. E. Lees,* with an oral argument by *Mr. Swagler.*

For respondent there was a brief over the names of *Mr. W. H. Brooke, Mr. J. W. McCulloch* and *Messrs. Gallagher & Kester,* with an oral argument by *Mr. P. J. Gallagher.*

BROWN, J.—1. It is familiar law that the plaintiff must recover, if at all, upon the cause of action averred in his complaint, and not upon issues without the record: *Boothe* v. *Farmers' Nat. Bank,* 47 Or. 299 (83 Pac. 785); *Eastman* v. *Jennings-McRae Logging Co.,* 69 Or. 1 (138 Pac. 216, Ann. Cas. 1916A, 185); *Portland* v. *O'Neill,* 98 Or. 162 (192 Pac. 909).

2. The plaintiff's evidence establishes that the defendant herein, who is sued severally, received no part of the $1,500 evidenced by the promissory note. Hence, defendant asserts that this action cannot be successfully prosecuted for the reason that the testimony shows him to be an accommodation maker, and known to be such by the payee of the note, and entitled to be released under the provisions of Section 7912, Or. L., reading:

"A person secondarily liable on the instrument is discharged (1) by any act which discharges the instrument; (2) by the intentional cancellation of his signature by the holder; (3) by the discharge of a prior party; (4) by a valid tender of payment made by a prior party; (5) by a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved; (6) by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made

with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved.''

This section of the statute does not release either of the joint makers of the note referred to because of the institution of this several action, or for any other reason of record. The defendant is in no way affected by the provisions of that section of the Code, for—

''As joint and several obligations involve separate obligations on the part of each obligor, a judgment in favor of or against one is no bar to an action against another. Indeed, the plaintiff may simultaneously bring separate actions against each of the obligors, but not a joint action against any number less than all.'' 1 Williston on Contracts, § 328.

To similar effect, see *Sears* v. *McGrew,* 10 Or. 48; *Noble* v. *Beeman-Spaulding-Woodward Co.,* 65 Or. 93 (131 Pac. 1006, 46 L. R. A. (N. S.) 162).

3. The defendant, for a defense, pleads the protection afforded by the statute of limitations.

Debts are not paid by the statute of limitations, but the effect of the statute is to bar a remedy for the collection thereof.

We have seen that the defendant, answering, asserts that his comaker had made no payments of interest or principal upon the obligation sued upon, within six years prior to the commencement of this action, and that the defendant had never made any payments thereon.

In early times, the statute of limitations was looked upon with disfavor by the courts, and when the slightest acknowledgment of the existence of an obli-

gation was made by the debtor he was deprived of the shield of protection provided by the statute.

"Even the courts of law resorted to a species of artifice to exclude its operation. * * But the judicial attitude of recent years is rather in favor of the statutes of limitations than otherwise, since they are considered as statutes of repose, and as affording security against stale claims." 17 R. C. L., Limitations of Actions, § 30.

Because of a statute peculiar to our own state, the decisions of other jurisdictions are not of great assistance in the determination of this cause.

Under the holdings of this court, the statute of limitations, pleaded as a defense by the defendant, cannot avail the defendant anything because of the provisions of Section 25, Or. L., reading:

"Whenever any payment of principal or interest has been, or shall be, made upon an existing contract, whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

In actions and suits against joint makers of promissory notes, it has been held a number of times by this court that a payment by one joint obligor will continue the liability or right of action thereon as against all of the joint obligors: *Partlow* v. *Singer et al.,* 2 Or. 307, 310; *Sutherlin* v. *Roberts,* 4 Or. 378; *Dundee Mtge. & Trust Inv. Co.* v. *Horner,* 30 Or. 558, 561 (48 Pac. 175); *Smith's Estate,* 43 Or. 595 (73 Pac. 336, 75 Pac. 133); *Sheak* v. *Wilbur,* 48 Or. 376 (86 Pac. 375, 11 Ann. Cas. 58); *Scott* v. *Christenson,* 49 Or. 223 (89 Pac. 376, 8 L. R. A. (N. S.) 1066); *Kaiser* v. *Idleman,* 57 Or. 224 (108 Pac. 193, 28 L. R. A. (N. S.) 169); *McLaughlin* v.

*Head,* 86 Or. 361 (168 Pac. 614, L. R. A. 1918B, 303).
The doctrine of these cases is to make the fact of
part payment the test for ascertaining whether the
action or suit is barred in cases· to which it applies,
and if it is not barred, the action, then, is based,
not on a new promise arising from the fact of part
payment, but upon the original promise.

In many other jurisdictions, a payment or prom-
ise to toll the statute of limitations is treated as a
new promise. A pertinent observation is made by
Freeman, in a note, 102 Am. St. Rep. 752:

"The statutes of limitation have always been a
most fruitful source of doubt and discussion, and
the decisions in regard to them have always been
more or less conflicting. Hence, whenever it has
been found that the question presented in the par-
ticular case under consideration has been settled by
the adjudications of the appellate court of the state
wherein the case is presented, those adjudications
are deemed controlling, regardless of the character
of the adjudications elsewhere."

It has been written by a text-writer that:

"An acknowledgment by a joint debtor does not
remove the bar of the statute as to his codebtor.
The promise of one of several joint obligors cannot
avail to revive as against the others a cause of ac-
tion barred by the statute, or to suspend the running
of the statute * * ." 1 Wood on Limitations (4
ed.), § 81d (2).

"Except in the four states already referred to
(one of which is Oregon), the doctrine in reference
to joint debtors—except partners—may be said to
be, that one codebtor can neither suspend nor remove
the statute bar by an admission of, or promise to
pay, the joint debt, nor by partial payment thereof,
out of his own funds, without the direction, assent,
or subsequent ratification of his codebtors." 2
Wood on Limitations (4 ed.), § 287.

In the case of *Partlow* v. *Singer et al., supra,* the plaintiff commenced an action on a promissory note executed by defendants to him on April 1, 1859. The complaint averred a payment of $10 on the note March 25, 1861. The suit was filed March 25, 1867. It was defended upon the grounds that the action had not been commenced against the defendants Charman and Warner within the time limited by law. It was admitted by both parties that the payment mentioned in the complaint was made by the defendant Singer without the knowledge or consent of the other defendants Charman and Warner, or either of them. It was urged by the defendants that a payment by one joint, or joint and several, maker of a promissory note, and indorsed upon the obligation, did not, in any way, affect the other makers. Decisions from other jurisdictions were cited, which strongly supported the defendants' contention. The court, speaking through Mr. Justice BOISE, observed:

"It has been strenuously urged in the argument that our statute can be so construed as not to overthrow the doctrine, now so well established by the weight of modern authority, 'that a promise or payment by one joint contractor does not bind his cocontractors so as to revive their liability'; and this is the sole question here. This requires an examination of Section 25 * * of the Code * * .

"In this case, the note was due at the time of the payment. The statute is silent as to the several liability of the party making the payment, and any obligor to a note may properly make a payment on it; and, as the statute fixes the time when the limitation shall commence, we think it was the intention of the legislature to revive the old rule, reviving liability as to all on a payment made by one of several joint debtors. We do not see how any other construction could be put upon it without violating the ordinary interpretation of language.

"Ordinarily, the statute begins to run when the note is due; in this case, the statute fixes the time at the date of the last payment, and such plain language can have no other signification. With the same statute, such is the rule in Minnesota (9 Minn. 13)."

The Minnesota statute was afterwards repealed. See *Willoughby* v. *Irish,* 35 Minn. 63 (27 N. W. 379, 59 Am. Rep. 297).

This construction, placed upon the foregoing section of the Code by this court, has never been changed, but, to the present time, it has often been followed and cited with approval by the court that rendered it.

The effect of Section 25 was next before this court in the case of *Sutherlin* v. *Roberts, supra,* involving a mortgage foreclosure. It contains the fullest discussion of the meaning and history of Section 25 found in any of the cases contained in our reports. Among other things, the court said:

"The most prominent feature of what is new in our statute is, that by Section 25, part payment prevents the time limitation from commencing to run; whereas, under previous statutes and adjudications, the time of limitation actually ran against the debt, and part payment was held to be evidence of a new promise which, being supported by the original consideration, became the basis of a new cause of action * * . It needs but a cursory examination of the cases relating to the effect of part payment under former statutes, to perceive that most embarrassing complications encumbered the subject when our statute was being enacted; a condition of the law which would naturally create a desire to substitute more simple rules for determining the liabilities of parties. By referring to the review of *Whitcomb* v. *Whiting,* above cited, it will be seen that the subject had not only become extremely complicated, but that

there were numerous points still involved in doubt.
* * Conflicting decisions on many of these and on other
similar practical questions rendered this subject an
exceptional field of unsettled disputes * * .

"The express words of the statute make the fact
of the payment the test for ascertaining the period
within which an action may be commenced on the
original promise or cause. The fact of payment be-
ing made the test for determining when the period
commences to run, the theory of requiring a new
promise or of founding an action on a presumed
new promise is abandoned, and the new promise is
no longer the foundation of the plaintiff's right of
action. * * By the words of the act, 'the limitation
shall commence from the time the last payment was
made.' "

In *Creighton* v. *Vincent,* 10 Or. 56, 57, the court,
in referring to Section 25, said:

"It refers only to payments made on contracts
before the statute has run against them, and fixes
by such payment a new date from which the limita-
tion of actions thereon commences to run, *de novo.*"

It is said in *Dundee Inv. Co.* v. *Horner, supra:*

"Its effect (Section 25) is to make the fact of
such part payment operate as a continuation of the
original promise, while, under the rule prevailing
elsewhere, the payment is only evidence of a new
promise, which, being supported by the original
consideration, becomes substantially the basis of a
new cause of action: 1 Wood on Limitations, 287.
In other words, under the statute, the payment pre-
vents any interruption of the original obligation. It
simply fixes the time when the statute commences to
run, and does not operate by means of a new prom-
ise to take a case out of a statute which is already
running at the time the payment is made. At least
this is the effect of the construction put upon the
statute by the adjudications of this court, and it has
therefore been held that payment by any person

liable, directly or in a representative capacity, will keep the debt alive as to all persons liable thereon, whether such payment was made by their authority or not."

Again, in *Smith's Estate, supra,* we have:

"In this state a payment by one joint maker of a promissory note before the statute of limitations has fully run will continue the liability or right of action thereon as to all, its effect being to continue the original promise."

In *Sheak* v. *Wilbur, supra,* the court said:

"The effect of a part payment is regulated in this state by a statute essentially different from that of any other state except perhaps Montana: §§ 24, 25, B. & C. Comp. This statute (Section 25) has repeatedly been before the court for consideration, and the doctrine was early announced that the payment by a joint maker * * will keep the debt alive as to his co-obligors."

From *Scott* v. *Christenson, supra,* we carve:

"The rule is settled in this state that a payment of a part of a joint obligation by a maker thereof, or by his agent or legal representative, revives it as against all persons who were liable thereon, though made without their knowledge or consent."

In *Kaiser* v. *Idleman, supra,* the court wrote:

"In this state a part payment continues and keeps alive the original promise."

See, also, *McLaughlin* v. *Head, supra.*

This case presents a principle of law of very frequent application in the transaction of business, and one which has been acted upon for a long course of time. It is always unsafe to depart from the settled law upon some theory of our own notion of justice in a given case.

110 Or.—3

Each of the makers of the note involved herein promised to pay Ford his $1,500, with interest. Every payment of interest on that note, made by King, inured to the benefit of Schall, in this: that it reduced his obligation to Ford in the amount paid.

Defendant asserts, in effect, that it is unfair for the plaintiff to maintain his action against Schall alone when Schall, well known to plaintiff, never received a cent of the $1,500 loaned to King. However, Section 25, as interpreted by the court, was established law and binding upon Schall when he signed the note. He was bound to know that, in the event of court action the plaintiff had his choice of remedies; that is to say, he had the lawful right to sue both makers jointly, or to sue each, or either, severally. The plaintiff chose to sue Schall severally. It was the right that the law gave him, and one that we cannot, if we would, abridge. Schall promised to pay the note, either severally or jointly. He is sued upon his own contract. Defendant's relief must come from King, not from Ford, who parted with his money on the strength of the joint and several promises contained in the writing. It follows that the court committed prejudicial error in allowing defendant's motion to strike from the record the evidence of King's payments of interest on the note. As a consequence, the findings and conclusions of the court, based upon a record from which the evidence of those payments was excluded, were erroneous. The statute of limitations had not run, because King's payments preserved the life of the note.

In the statement we set out the record relating to the effort made by plaintiff to amend his complaint.

"The court may, at any time before trial, in furtherance of justice, and upon such terms as may be

proper, allow any pleading or proceeding to be amended by adding the name of a party, or other allegation material to the cause; and in like manner and for like reasons it may, at any time before the cause is submitted, allow such pleading or proceeding to be amended, by striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or when the amendment does not substantially change the cause of action or defense, by conforming the pleading or proceeding to the facts proved." Section 102, Or. L.

4. Where the opposing party is not misled and it is in the interest of justice, the above provision of our Code should be liberally construed.

This court has held many times that the exercise of the power conferred by the quoted statute is within the sound discretion of the court, and that the appellate court will never reverse the judgment of the trial court except for an abuse of the conferred discretion.

5. The trial court properly held that it was unnecessary to amend the complaint. The complaint set out a joint and several note, bearing the names of King and Schall. It did more. It alleged payments of interest within the period of time fixed by the statute of limitations and within six years prior to the commencement of the action. The defendant's answer treated the note as joint and several, and the court found that it was the joint and several note of King and Schall.

Because of the errors hereinbefore noted, growing out of the court's order striking competent evidence from the record, this cause is reversed and remanded.

REVERSED AND REMANDED.

Mr. Justice BURNETT did not participate in the consideration of this case.

Rehearing denied February 13, 1924.

ON PETITION FOR REHEARING.

(222 Pac. 1094.)

For the petition, *Mr. W. H. Brooke, Messrs. Gallagher & Kester* and *Mr. J. W. McCulloch.*

*Contra, Mr. Wm. E. Lees* and *Mr. R. W. Swagler.*

BROWN, J.—The defendant has petitioned this court for a rehearing and for a modification of the opinion filed January 14, 1924. The petition asserts that the court failed to consider the point relied upon by respondent and set forth under paragraphs 4 and 5, on pages 20 and 24 of his brief, which relates to the consequence of the commencement of an action against Schall alone, without joining King, his co-maker. Defendant claims, in effect, that plaintiff, having elected to sue Schall alone, is bound by the rules of law applicable to several contracts, uncontrolled by statutes like ours hereinafter set out. He urges with much force that the payment of interest by defendant's co-obligor having been made without the knowledge or authority of the defendant, such payment cannot toll the statute as to the defendant's several obligation.

This is a several action, commenced against one of the comakers of a joint and several promissory note. In our opinion, we held that the payment of interest by the defendant's co-obligor tolled the statute of limitations as to both makers of the note sued upon. Our ruling is based upon a statute essentially different from that of most other states. It reads:

"Whenever any payment of principal or interest has been or shall be made upon an existing contract,

whether it be bill of exchange, promissory note, bond, or other evidence of indebtedness, if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made." Section 25, Or. L.

The "existing contract" embraced within the provisions of Section 25, Or. L., in its application to the case at bar, is the joint and several promissory note that was made by G. P. Schall and Will R. King. That was the "existing contract" pleaded. It was the "existing contract" introduced in evidence. That contract was kept alive as to both makers, by the payment of the interest thereon by one of its joint makers. This action is a several action, but it is based upon a living, joint and several contract to pay money.

It is true, as argued by defendant, that the plaintiff had a right to elect his remedy and sue each maker separately or both jointly.

"A joint and several contract is with each promisor and also with all jointly, with the result that they are all liable together on the joint obligation, and each individual is liable upon his separate obligation, and they may be sued jointly or severally as the promisee may elect." *Anderson* v. *Stayton State Bank,* 82 Or. 357, 373 (159 Pac. 1033, 1039).

See 13 C. J. 576.

Illustrative of the different views relating to the tolling of the statute of limitations by joint obligors, we quote:

"One of the frequent instances in which the question of the effect upon other joint obligors of a part payment by one of them arises is that of the payment by one of several makers of a joint and several note. There the rule, founded on the principle of agency, has been followed in many cases, it being held that payment by one joint maker, before the statute has

run against the demand, will start the statute running anew as to the others. * * So it has been held that payment of interest * * by a joint maker of a promissory note, before the statute of limitations has run against it, will prevent the running of the statute as to all the makers. * * In other jurisdictions, however, the contrary view is held, it being declared that such a payment does not affect the other makers, when made without their assent or ratification, and is only regarded as extending the statutory period so far as the one making the payment is concerned." 17 R. C. L., pp. 939, 940.

Again, "The courts are not in harmony as to the effect of a partial payment made by one of several joint debtors. The weight of authority, however, supports the rule that such payment made without the acquiescence, consent, or ratification of the other joint debtor will not operate to suspend the running of the statute of limitations, as to him, and the same rule applies where the contract of indebtedness is joint and several. * * In some jurisdictions views contrary to those heretofore set forth in this section prevail, and a payment made by one before the bar is complete is regarded as the act of and suspends the running of the statute as to all, provided the payment is made in good faith." 25 Cyc. 1385, 1386.

Among the authorities noted as supporting the latter proposition is *Partlow* v. *Singer,* 2 Or. 307, cited in our original opinion, and followed by all subsequent decisions of this court, as noted in that opinion.

In most states, payment of interest or a part of the principal by one joint debtor without the knowledge of the other does not affect the running of the statute of limitations as to the other obligor; but, due to our peculiar statute, our court has held otherwise. In applying Section 25 of our statute, this court has invariably held, in effect, that payment by one joint debtor is payment for all, the one acting virtually as agent for the rest. The holding is that the provision

of our statute reading: ''The limitation shall commence from the time the last payment was made,'' applies to each maker of the contract.

In this action, Section 25 alone fixes the time when the statute of limitations commences to run. The payment of interest by King was not a new promise. Under the statute, as construed uniformly by this court, it was a continuation of the original promise to pay, and that payment dates the commencement of the period of limitation.

Bound as we are by the statute and its well-understood meaning, as construed by this court in a number of cases cited in the original opinion, we must deny defendant's petition.    REHEARING DENIED.

Mr. Justice COSHOW, having been appointed after the hearing of this case, did not participate in the decision.