Argued July 7, affirmed October 19, 1966

# ATCKISON *v.* TRIPLETT

419 P. 2d 4

*Frederic P. Roehr,* Portland, argued the cause for appellant. On the brief were Vergeer, Samuels, Cavanaugh & Roehr, and Walter H. Sweek, Portland.

*Curtis W. Cutsforth,* Portland, argued the cause for respondent. With him on the brief were King, Miller, Anderson, Nash & Yerke, and Dean D. DeChaine, Portland.

Before PERRY, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

LUSK, J.

This is an action to recover on an agreement guaranteeing the minimum price of certain corporate stock. In a jury trial the court directed a verdict for the defendant and plaintiff appeals.

The plaintiff, John Atckison, and Henry Cohen

formerly owned, as a partnership, a chain of super-markets known as Ceba Markets. In 1960 they sold all the assets of Ceba Markets to a corporation known as Big C Stores, Inc. (hereinafter referred to as Big C) for a consideration of 36,000 shares of the corporation's common stock and 1,800 shares of its preferred stock, each of the partners receiving 18,000 shares of common stock and 900 shares of preferred stock. Big C was represented in this transaction by the defendant William Triplett, Jr. After stating these facts, it is alleged in the second amended complaint upon which the case was tried that:

"* * * in May, 1960, the defendant guaranteed to the plaintiff and Henry Cohen that they would receive not less than $12.00 per share, from defendant, for the shares of said common stock, either upon a direct sale to defendant, or upon payment by defendant of any difference between the sum received upon sale at market price of said shares and the guaranteed sum of $12.00. A written memorandum of said agreement was subscribed by the defendant and the terms of said memorandum are set forth in Exhibit A, attached hereto and by this reference made a part of this Complaint."

Exhibit A reads:

"It is mutually understood and agreed by and between Party #1, which constitutes one person, and Party #2, which constitutes two persons, to the following facts and conditions:

"Party #2, equal owners of that certain stock in the amount of 35,000 shares is guaranteed a minimum price of $12.00 per share by Party #1 with the following provisions:

"1. A period of one year from the date of the receipt of the above referred stock by Party #2 must elapse before guarantee becomes effective.

"2. If during the year period said stock reaches a market bid price of $12.00 Party #1's guarantee becomes null and void.

"3. Party #2 has right after one year if stock does not reach market bid price of $12.00 to call on Party #1 to either purchase all or part of shares at $12.00 or sell at market bid price with difference between sale price and $12.00 to be paid by Party #1 to Party #2.

"4. Party #1 has right to determine which method to use as outlined in Paragraph marked 3[.] and if second method is one determined Party #1 will make disbursement of difference within 90 days."

The plaintiff further alleged that on March 28, 1962, he sold his 18,000 shares of common stock of Big C at the market price of four and seven-eighths dollars per share; that he demanded performance of the agreement by defendant, who refused; and he prayed for judgment in the sum of $126,000, the difference between the price received by him and the guaranteed price of $12 per share.

The only witness was the plaintiff. He testified to the sale of Ceba Markets to Big C on the terms above stated, but the court sustained various objections of counsel for the defendant to plaintiff's efforts to prove the agreement sued upon. Whether the court was right in directing a verdict for the defendant depends upon the propriety of these rulings.

■ It should first be noted that when the pleadings were being made up the defendant filed a motion to make the first amended complaint more definite and certain in several particulars. Attached to that pleading was an identical copy of the agreement, Exhibit A, attached to the second amended complaint. Among

other things, the defendant asked by specification 5 of his motion that plaintiff be required to attach to the complaint or set forth "in haec verba the agreement subscribed to by defendant." After a hearing upon the motion the Presiding Judge entered an order, which, among other things, provided:

> "ORDERED that part 5 of defendant's motion is denied because of plaintiff's counsel's statement to the court that exhibit A attached to plaintiff's amended complaint is a true copy, except for signatures thereto, of the guaranty agreement constituting the basis for plaintiff's cause of action."

The recital in the order regarding plantiff's counsel's statement to the court, of course, imports verity and has not been disputed and the plaintiff was therefore committed to proof of an agreement in writing. With this purpose in view plaintiff served on counsel for defendant, seasonably before trial, a motion to produce the original of Exhibit A.

On the trial the court sustained an objection to a question to the plaintiff designed to elicit from the witness the terms of the alleged agreement. The objection was on the ground that the writing was the best evidence. Counsel for the plaintiff then asked counsel for defendant to produce the original document in accordance with his notice and counsel for the defendant responded that there was no signed document and he was not prepared to produce one. Counsel for defendant then called upon Mr. Henry Cohen, who was in the courtroom, to produce a carbon copy of the document and Mr. Cohen did so. The plaintiff thereupon testified that the document produced was a carbon copy of the agreement and contained a memorandum of the guaranty made by the defendant; that he did not have the original of the document; that the

original was initialed by the defendant and by Henry Cohen and the plaintiff; that he did not receive the original; that he had not seen it since it was initialed and that "Henry Cohen is the only one that I know of that has that original."

At the time that the document was produced by Mr. Cohen counsel for the plaintiff stated that he would call Mr. Cohen as a witness later to identify the document. Mr. Cohen was never called.

After the carbon copy had been identified by the plaintiff as a true copy of the original it was offered in evidence by the plaintiff and objected to on the grounds that it was not signed, did not comply with the statute of frauds and was not the original. The agreement was said to be within the statute of frauds because it was not to be performed within a year from the making.

The court sustained the objection to admission of the exhibit.

Counsel for plaintiff then made an offer to prove an oral agreement of guaranty. Counsel for defendant objected to the offer of proof on the ground that evidence of an oral agreement would not conform to the pleading and that the agreement was within the statute of frauds. The court sustained the objection; plaintiff rested; defendant rested; and the court allowed defendant's motion for a directed verdict.

■ We think that all the rulings complained of were correct. The carbon copy of Exhibit A was properly excluded. Apart from the objection on the ground of the statute of frauds, no sufficient foundation was laid for the admission of secondary evidence of the contents of the writing. The following provisions of our statutes govern the question:

ORS 41.610: "The original writing shall be pro-

duced and proved except as provided in ORS 41.640. If the writing is in the custody of the adverse party and he fails to produce it after reasonable notice to do so, the contents of the writing may be proved as in the case of its loss. * * *"

ORS 41.640: "(1) There shall be no evidence of the contents of a writing, other than the writing itself, except:

"(a) When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in ORS 41.610. .

"(b) When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default. "* * * * *"

Counsel for defendant assured the court that the original was not in the possession of the defendant and there is no contention here to the contrary. There is no showing of "proper diligence" as required by ORS 41.640 (1). The plaintiff himself testified: "Henry Cohen is the only one that I know of that has that original." Mr. Cohen was in the courtroom. Counsel for plaintiff said he would call him later, but failed to do so. If there was anyone who could produce the document or testify whether it was still in existence, it would seem that Henry Cohen was that person. He was not called as a witness by the plaintiff and, so far as the record discloses, the plaintiff never at any time sought information from him concerning the matter.

But even though the exhibit should have been admitted in evidence in connection with the testimony of the plaintiff that the original was initialed by the parties, it would have availed the plaintiff nothing,

since the agreement by its terms was not to be performed within one year. ORS 41.580 provides in part:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"(1) An agreement that by its terms is not to be performed within a year from the making."

Assuming that the plaintiff was able to show a memorandum of the agreement in writing "subscribed by the party to be charged,"[1] the writing sought to be introduced was insufficient to comply with the statute because it expresses no consideration.

■■ The plaintiff contends—although the second amended complaint does not so allege—that the consideration for the guaranty agreement was the transfer of the assets of Ceba Markets to Big C and that this performance by plaintiff and his partner Cohen of their agreement with Big C is to be regarded as part performance of their contract with the defendant, thereby taking that contract out of the statute of frauds. But the doctrine of part performance is not applicable unless the acts of part performance are ex-

---

[1] This court has held that "by requiring that the agreement or memorandum must be *subscribed* the Oregon legislature must have intended that the signature of the party to be bound should be affixed at the end of the agreement or memorandum": Com. Credit Corp. v. Marden, 155 Or 29, 37, 62 P2d 573, 112 ALR 931. According to 2 Corbin on Contracts 768, § 522, "an abbreviation, with no more than the initial letters or even a single initial" may be a sufficient signature. Assuming that initials may fulfill the requirement of a signature, there is no evidence as to where the initials of the defendant appeared on the memorandum.

clusively referable to the oral agreement: *Jewell v. Harper,* 199 Or 223, 234, 258 P2d 115, 260 P2d 784; *Howland v. Iron Fireman Mfg. Co.,* 188 Or 230, 279, 213 P2d 177, 215 P2d 380. Professor Corbin explains the rule in these words:

> "It is believed that the principal idea that is struggling for expression is that the part performance must be clearly evidential of the existence of a contract—it must be such as would not ordinarily have taken place in the absence of a contract and therefore is not reasonably explicable on some other ground." 2 Corbin on Contracts 473, § 430.

The transfer by plaintiff and Cohen of the assets of Ceba Markets to Big C might well be deemed "clearly evidential of the existence of a contract" of sale to the latter, but there is nothing about such a transaction to suggest a contract with a third person to guarantee the market price of stock received by the sellers from the buyer of such assets.

There is another reason why plaintiff will not be permitted to rely on an oral agreement. As previously stated, he is committed to the proof of an agreement in writing by his pleadings and the statement of his counsel to the court that the writing, Exhibit A to the second amended complaint, with the exception of the signatures thereto, constituted "the basis for plaintiff's cause of action." We need not cite authorities for the proposition that a plaintiff must recover, if at all, on the allegations of his complaint and not on a new and different issue first attempted to be introduced into the case at the trial.

The court did not err in directing a verdict for the defendant and the judgment is affirmed.