Argued October 9, 1969, reversed and remanded June 17,
petition for rehearing denied July 21, 1970

AUSTIN, *Appellant, v.* SISTERS OF CHARITY
OF PROVIDENCE ET AL, *Respondents.*

470 P2d 939

*Nick Chaivoe,* Portland, argued the cause for appellant. On the briefs were Lloyd F. Ryan, Jr., Peterson, Chaivoe & Peterson, and Fulop, Gross & Saxon.

*George M. Joseph,* Portland, argued the cause for respondents. With him on the brief were Morrison & Bailey and Thomas E. Cooney.

Before Perry,* Chief Justice, and McAllister, Sloan, O'Connell, Goodwin,** Denecke, and Holman, Justices.

\* Perry, C.J., retired June 1, 1970.
\*\*Goodwin, J., resigned December 19, 1969.

McALLISTER, J.

This is an action for personal injuries allegedly suffered by plaintiff in 1966 as a result of negligence on the part of an X-ray technician employed by the defendant Providence Hospital. Defendants are the hospital and Dr. Gregory B. Nichols, the radiologist in charge of the hospital's X-ray department. Plaintiff's complaint alleged that as a result of the technician's negligence he suffered injuries in the form of

"* * * acute strain of the muscles, nerves, ligaments and soft tissues of his low back causing severe pain to his low back, and pain radiating into his legs, which pain and discomfort continues to the present, and that said injuries have further caused him extreme mental anguish and permanent disability, * * *."

He alleged both general and special damages, and prayed for judgment in the amount of $53,318.40.[1] A trial was had to the jury, which returned a verdict for the full amount of the prayer. The defendants, whose motions for directed verdict had been denied, moved for a judgment notwithstanding the verdict, and in the alternative for a new trial. The motion for judgment n.o.v. was granted, and a judgment for defendants was entered. Plaintiff appeals from this judgment. Defendants have cross-appealed, contending that if it was error to grant the judgment n.o.v. their motion for a new trial should have been granted.

We think that entry of judgment for defendants notwithstanding the verdict was error, but that defendants are entitled to a new trial.

---

[1] Errors in computation were apparently made in the course of amending the complaint at trial, resulting in allegations of general damages in the amount of $53,318.40 and special damages in the amount of $3,326.40, but a prayer for the total of $53,318.40 only.

Plaintiff had a history of back injury. In 1960 he had injured his back and as a result underwent surgery —first a laminectomy for a ruptured disc, and later a spinal fusion. His recovery from the fusion operation was good and his doctor released him for work without restriction sometime in 1961. He testified that from 1961 to February of 1966 he held a number of jobs, mostly in lumber yards, which involved considerable lifting and physical labor. According to plaintiff, he performed his work without difficulty and had no back troubles referrable to his injury during this period. He entered Providence Hospital in February, 1966, for diagnostic studies related to possible stomach and gall bladder troubles.

Plaintiff testified that while he was lying on his back on a table in the hospital's X-ray department, an X-ray technician, in an attempt to position him, stood behind his head, grasped him beneath the arms, and pulled him. He further testified that this action caused him severe pain in his back at the time, and that the pain continued throughout his stay in the hospital and thereafter. Entries in the hospital records corroborated this testimony.

Dr. Cottrell, an orthopedic surgeon, testified that plaintiff consulted him about his back pain on March 2, 1966, less than ten days after the alleged injury. At that time, Dr. Cottrell's diagnosis was "sprain of the muscle attachment, lower back." His examination of plaintiff revealed severe muscle spasm, with no involvement of the nerve roots. Dr. Cottrell had performed the 1961 surgery on plaintiff's back.

Although there is evidence tending to show that plaintiff's back pain in 1966 could have been caused by other things, including a viral infection of the nervous

system, we think there was ample evidence from which the jury could find that plaintiff suffered an injury to his back as a result of the incident on the X-ray table.

When a motion for judgment notwithstanding the verdict is made after a motion for a directed verdict has been denied, the evidence is to be viewed in the light most favorable to the party in whose favor the verdict was rendered. A judgment n.o.v. ought not to be granted if there is any substantial evidence to support the verdict. *Roberts v. Coleman et al*, 228 Or 286, 288, 365 P2d 79 (1961); *United Finance Co. v. Kliks*, 210 Or 288, 291, 310 P2d 1103 (1957).

Defendants point out that there is no medical opinion testimony of causation. We think that this is a case in which the jury could be permitted to find, without such medical testimony, that plaintiff's back sprain was caused by the incident in question. We said in *Uris v. State Compensation Department*, 247 Or 420, 426, 427 P2d 753, 430 P2d 861 (1967), that the "distinguishing features" of such cases are:

> "* * * an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury: * * * * "[2]

All of these features are present in this case.

---

[2] *Uris* was a compensation case, but we see no reason for confining the holding on this point to such cases. The considerations enumerated there are equally valid in any case in which a jury must decide the cause of the plaintiff's injury.

We also think there was evidence from which the jury could find that the X-ray technician was negligent. Dr. Nichols, the radiologist in charge of the hospital's X-ray department, testified that pulling a patient in the manner described by plaintiff was not a proper positioning technique. Asked about proper techniques, he testified:

> "You slide them—you push them, you straighten them, but you do not yank or pull them."

Because there was sufficient evidence to permit the jury to find that plaintiff had suffered an injury resulting from the negligence of defendants' employee, it was error for the trial court to enter judgment for defendants. There was, however, manifest error in submitting the case to the jury, and defendants' motion for a new trial should have been granted.

■ The difficulty stems from the evidence of the progress of plaintiff's back ailment following the injury. As mentioned above, Dr. Cottrell diagnosed a sprain. He instituted a course of conservative treatment, including physical therapy, with little or no success. From April 5 through April 23, 1966, plaintiff was hospitalized, under Dr. Cottrell's care, for bed rest and traction. After his discharge from the hospital, plaintiff was put in a body cast to relieve the pain. On May 5 he was admitted to the Portland Veterans Administration Hospital. The body cast was removed, and he was examined and received further conservative treatment there; he was fitted with a back brace and discharged on May 24, but he continued to receive treatment through the outpatient clinic. On August 29 he went to work (an earlier attempt to return to work had lasted only a week and a half because of his back pain), and worked until February of 1967 "pulling"

veneer from a dry chain. Plaintiff testified that the veneer was not heavy, but that he nevertheless missed work "several times" because his back was bothering him. On February 28, 1967, he was again admitted to the Veterans Administration Hospital. Various tests were performed, and on March 27, 1967, he had another operation on his back. This operation disclosed the existence of a condition known as "pseudoarthrosis" or "pseudarthrosis," which was described to the jury as the failure of a bone fusion to join properly. The pseudoarthrosis was at the site of his 1961 fusion operation, and was corrected by a surgical refusion.

There was no evidence to indicate that the pseudoarthrosis was caused by the defendants' negligence, and no evidence that plaintiff's permanent disability was caused by anything other than the pseudoarthrosis and the refusion surgery which it made necessary. The medical testimony indicated that the usual cause of a pseudoarthrosis is the failure of an artificial fusion to join properly. The only indication that it could be caused by trauma is found in Dr. Cottrell's testimony that "certain stresses and strains" can magnify hairline cracks in an apparently solid spinal fusion. He also testified that if the original fusion had not been solid, plaintiff would have had continuous pain preventing him from doing heavy work. None of the doctors who testified were asked whether the pulling or wrenching which plaintiff suffered at the hands of defendants' employee could have caused his pseudoarthrosis.

The medical testimony is wholly inadequate to permit a jury to find that plaintiff's back troubles all resulted from defendants' negligence. A pseudoarthrosis, unlike a sprain, is not a commonly understood

condition or injury. The rule of *Uris v. State Compensation Department,* supra, would not apply. Expert testimony would be necessary to establish a causal connection. *Howerton v. Pfaff,* 246 Or 341, 425 P2d 533 (1967). The expert testimony presented did no more than suggest a speculative possibility. There can be no doubt that the jury seized upon this possibility in returning a verdict in the full amount of the prayer. The damages alleged included permanent disability and impaired earning capacity, and probably the medical bills for the refusion surgery.[9]

Moreover, there could be no recovery for the pseudoarthrosis under the pleadings, regardless of the state of the proof. Plaintiff's complaint alleged injury only to the "muscles, nerves, ligaments and soft tissues" of his back. There was no mention of injury to the spine itself. Plaintiff made no attempt at trial to amend his complaint to include such an injury Plaintiff's recovery must rest on the allegations of his complaint. *Atckison v. Triplett,* 244 Or 475, 483 419 P2d 4 (1966); *Jaloff v. United Auto Indemnity Exch.,* 121 Or 187, 200, 253 P 883 (1927); *Fitzpatrick v. Sletten,* 117 Or 173, 178, 242 P 1114 (1926); *Ford v. Schall,* 110 Or 21, 26, 221 P 1052, 222 P 1094 (1924).

Defendants seasonably called these problems to the

---

[9] It is not entirely clear that the latter item was included. The reasonableness of the amounts of the medical bills was stipulated, and no evidence concerning the individual items was introduced. It appears, however, from a discussion which took place outside the presence of the jury, that they included a sizeable bill from the Veterans Administration Hospital. On retrial, the items of special damage should be submitted separately so that the court can rule on whether their recovery is justified by the evidence and the jury can decide whether each item was caused by defendants' negligence.

trial court's attention. After both sides had rested, they requested orally that the jury be instructed that

"\* \* \* there could be no recovery in this case for any pseudoarthrosis—any aggravation of any pseudoarthrosis or that there is no possible recovery for any breaking of any type of a fusion because this is not within the scope of the pleadings and has not been covered."

After the court had instructed the jury, the following exceptions were noted:

"I would except to the method of submission of the case in that the jury could be allowed to consider as an element of damages the possible breaking of the fusion, be it solid or fibrous.

\* \* \* \* \*

"I would except to the submission that the matter of impairment of earning capacity in that there is no evidence that there was any impairment of any earning capacity due to any injury which there is no evidence to show was proximately caused by any negligent act of the defendant, but rather it appears that it was due to a pre-existing pseudoarthrosis."

The jury was instructed that plaintiff could not recover for aggravation of a pre-existing condition, but was not cautioned that there could be no recovery for the pseudoarthrosis, regardless of its origin. We think the failure to so instruct was error and, in view of the verdict returned, clearly prejudicial to the defendants. Their motion for a new trial, which adequately raised the questions discussed above, should have been granted.

■■ Another error, properly preserved in the trial court and raised in defendants' cross-appeal, should be mentioned. The trial court instructed the jury on the

application of the doctrine of res ipsa loquitur in the following language:

"Now, you should know several things in connection with this charge. You should know that there must be reasonable evidence of negligence; that where the particular act is to be shown, is shown to be under the management of the defendant or its servants; and the accident is such that in the ordinary course of things, does not happen [if] those who have the management used proper care. This affords a reasonable basis of evidence in the absence of explanation by the defendants that the accident did in fact arise from the want of care."

Defendants excepted to this instruction and specified it as error in the motion for a new trial. Its accuracy as a statement of the law of res ipsa loquitur has been argued in this court, but we need not consider that question. To give any instruction at all suggesting the application of this doctrine in this case was error. The doctrine is only applicable in cases where the court can say that the probability that the accident was caused by negligence is greater than the probability of a non-negligent cause. *Kaufman v. Fisher*, 230 Or 626, 639-640, 371 P2d 948 (1962). This is not such a case.

Reversed and remanded.