Argued and submitted November 5, 1982, affirmed July 6, reconsideration denied September 30, petition for review denied December 6, 1983 (296 Or 195)

# OREGON FREIGHTWAYS, INC.,
*Appellant,*

*v.*

# LOBDELL,
*Respondent,*
# DELTA LINES, INC.,
*Intervenor-Respondent.*

## (A8205-02900; CA A25681)

666 P2d 853

John G. McLaughlin and Paul H. Krueger, Portland, argued the cause for appellant. With them on the briefs was McLaughlin & Woods, Portland.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Donald H. Pearlman, Portland, argued the cause for intervenor-respondent. With him on the brief was Keane, Harper, Pearlman and Copeland, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff appeals from the trial court's order affirming an order of the Public Utility Commissioner of Oregon (commissioner) denying plaintiff's application to acquire by transfer from Tyway, Inc., a certificate to operate as a common carrier. Plaintiff raises four assignments of error. It asserts that the trial court erred in failing to reverse or set aside the commissioner's order because, in deciding to deny the transfer of operating authority, the commissioner (1) considered the possible detrimental effects of the proposed transfer on other carriers serving the same area, (2) applied a "public convenience and necessity" rather than a "public interest" test, (3) considered evidence not properly made part of the record and (4) made an arbitrary decision to deny the transfer. We affirm.

The certificate at issue grants authority for common carriage of general commodities between Portland and the California border via Klamath Falls, between Medford and Ashland, between Portland and Reedsport, Coquille, Coos Bay and Charleston and local cartage in some of those cities. Tyway acquired the certificate in September, 1980, and operated until it filed bankruptcy in March, 1981. In April, 1981, plaintiff was incorporated by the shareholders and officers of Peters Truck Line of California for the purpose of acquiring the certificate. Plaintiff filed an application for transfer of the certificate with the commissioner and an application for temporary authority to operate under the certificate. Temporary authority was granted in May, 1981. On March 3, 1982, after a hearing, the commissioner issued his order denying the transfer application. On May 3, 1982, the commissioner denied plaintiff's petition for reconsideration and canceled the temporary authority. Plaintiff brought a suit to reverse, set aside or modify the commissioner's orders under ORS 756.580. The court affirmed the commissioner, and plaintiff appeals.

As discussed more fully below, one of the major factors the commissioner relied on to deny the transfer was the possible detrimental effect the proposed transfer would have on other carriers that serve the same area. Plaintiff argues that the history of the relevant statutes illustrates the legislature's intent that that factor not affect whether a transfer should be granted.

ORS 767.020(1) sets out the policy concerning the common carrier business. Prior to 1969, it provided:

> "The business of operating as a motor carrier of persons or property for hire upon the highways of this state is declared to be a business affected with the public interest, and that regulated competition is desirable when it is deemed to be in the public interest."

It now provides:

> "The business of operating as a motor carrier of persons or property for hire upon the highways of this state is declared to be a business affected with the public interest. It is hereby declared to be the state transportation policy to promote safe, adequate, economical and efficient service and to promote the conservation of energy; to foster sound, economic conditions in transportation; and to encourage the establishment and maintenance of reasonable rates for transportation services, without unjust discriminations, undue preferences or advantages or unfair or destructive competitive practices."

ORS 767.135(4) sets out the legal standards the commissioner is to apply when deciding whether to issue a new certificate or grant a transfer. Before 1969 it provided, in part:

> "If the application for issuance or transfer of a permit is the subject of a hearing, the commissioner shall issue the permit * * * if the commissioner finds from the record and the evidence that:
>
> "* * * * *
>
> "(c)   The operation proposed is in the public interest;
>
> "* * * * *
>
> "(e)   The granting of a permit will not result in the impairment of the ability of existing operators adequately to serve the public;
>
> "* * * * *"

ORS 767.135(4)(c) now provides in part that new certificates may be issued only if the new service "is or will be required by the present or future public convenience and necessity" and that a transfer may be granted only if it is in the "public interest." The "impairment of existing operators" language is no longer part of the statute.

Plaintiff argues that, because the legislature removed the "impairment" language from the statute, the commis-

sioner is precluded from considering the effect of a transfer on existing carriers. We disagree for three reasons. First, in the construction of amendatory acts, it is presumed that material changes in language create material changes in meaning but that the meaning of retained preexisting language is not changed more than is expressly declared or necessarily implied. *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 597-98, 581 P2d 50 (1978). Here, assuming without deciding that a finding of impairment of existing carriers no longer *requires* the denial of a certificate transfer, it is not necessarily implied that the commissioner cannot consider impairment as a factor in his decision whether a transfer is in the "public interest." Second, the state policy "to promote safe, adequate, economical and efficient service" and "to foster sound, economic conditions in transportation," ORS 767.020(1), implies a legislative intent that the commissioner consider the effect of a proposed transfer on the ability of the existing carriers to serve the public adequately. Third, and most cogently, because the present "public interest" standard is substantially identical to the federal standard for transfers of interstate carrier authority, 49 USC § 5(2)(b) (1976), and the present state transportation policy is nearly identical to the federal policy, 49 USC § 10101(a) (1976 Supp III 1979), the interpretation of the federal statute provides guidance in the interpretation of our statute. *See Santiam Fish & Game Ass'n v. Tax Com.,* 229 Or 506, 512, 368 P2d 401 (1962). Federal courts have stated that the impairment of existing carriers is a factor in the "public interest" standard. *Navajo Freight Lines, Inc. v. United States,* 186 F Supp 377, 381 (D Col 1960); *Ratner v. United States,* 162 F Supp 518, 519 (S D Ill 1957), *aff'd* 356 US 368 (1958). The commissioner's interpretation of "public interest" to include consideration of the effect of the proposed transfer on other carriers coincides with legislative intent. Therefore, we hold that he did not err. *See Springfield Education Ass'n v. School Dist.,* 290 Or 217, 224-28, 621 P2d 547 (1980).

Plaintiff argues that the commissioner applied the "public convenience and necessity" standard, rather than the "public interest" standard required by ORS 767.135(4)(c), in deciding whether to grant the transfer. Plaintiff has the burden to prove by clear and convincing evidence that the order was unlawful. ORS 756.594.

In his order, the commissioner often referred to the "public interest" standard and relied heavily on two factors: the lack of significant shipper reliance on Tyway and the adverse impact the transfer would have on existing shippers. The commissioner found that Tyway's operations before bankruptcy, 108 partial truckload shipments per day, were insignificant compared to the carrier traffic in its area and were insufficient to constitute a viable operation. Concerning the effect of the proposed transfer on other carriers, the commissioner found that plaintiff has sufficient financial backing to compete with existing carriers and expand its operations until it became profitable, that no new traffic volume is presently available in the area and that no evidence shows existing carriers are not providing efficient and adequate service. From these facts, the commissioner inferred that any expansion in plaintiff's operations would reduce the traffic served by the existing carriers, that the existing carriers could compensate either by increasing costs or reducing operations and that one or more of those carriers may not be able to continue operating if the transfer was granted.

We conclude that the two major factors applied by the commissioner and the facts and inferences he relied on show that he applied the "public interest" standard. The commissioner also stated that plaintiff's proposed operations would constitute essentially a new operation and that plaintiff had not shown a public need for it. Although it would be error for the commissioner to *require* a transfer applicant to show a public need for the transfer, it was not error to consider public need as a factor in the "public interest" test when, as here, the transfer would result in expanded operations.

Plaintiff argues that the commissioner's order was based in large part on evidence made part of the record through the improper use of official notice. The trial court refused to consider this purported error, because plaintiff failed to allege it in its complaint. The error was not properly before the trial court, and it did not err in failing to consider it. *See Atckison v. Triplett,* 244 Or 475, 483, 419 P2d 4 (1966); *Pacific N.W. Bell v. Sabin,* 21 Or App 210, 214, 534 P2d 984, *rev den* (1975).

Last, plaintiff argues that the commissioner's conclusions that the past use of the certificate by Tyway was "insignificant" and that the transfer was not in the public interest

were arbitrary. Plaintiff supports this argument with recent orders by the commissioner in other cases in which he found that a lesser use of a certificate was not "insignificant" and that existing carrier operations in the area were not sufficient.

■■■■  Our review is limited, because plaintiff failed to designate the transcript of the commissioner's hearing as part of the record on appeal.[1] Because we do not have the transcript before us, we assume that the commissioner's findings are supported by substantial evidence. *Mt. Hood Stages v. Haley,* 4 Or App 385, 389, 478 P2d 645 (1970), *rev den* (1971). We will uphold a commissioner's order if there is a rational relationship between the facts found and the legal conclusion reached, even if we do not agree with the commissioner's inferences or reasoning. *American Can v. Lobdell,* 55 Or App 451, 461, 638 P2d 1152, *rev den* 293 Or 190 (1982). We conclude that there is a rational relationship between the facts that the past use of the certificate was insignificant, that the transfer could have detrimental effects on present carriers' ability to serve the public and the commissioner's conclusion that the transfer would not be in the public interest.

Affirmed.

---

[1] The notice of appeal stated, in part:

"Appellant designates for inclusion in the record on appeal herein, the entire trial court file, including any record of oral argument, all exhibits and all memoranda submitted by the parties to this action."