Argued February 25, affirmed March 24, 1975

SERIGANIS, *Respondent, v.* FLEMING
(No. 404 888), *Appellant.*

533 P2d 183

*Richard F. Porter,* Portland, argued the cause for appellant. With him on the brief were Gilley, Busey & Porter, Portland.

*William E. Blitsch,* P. C., Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and LEE, Judges.

LEE, J.

Respondent-claimant alleges that he sustained a back injury in the course of his employment. The referee denied the claim and was reversed on appeal to the Workmen's Compensation Board. The Board was affirmed by the circuit court. Employer, Fleming, seeks reversal by this court. We affirm.

■■ As the trial court stated in its opinion, "The sole issue for determination here is whether claimant suffered a compensable injury May 3, 1973." On appeal, this issue has been raised and met on two fronts. *First,* Fleming argues that the evidence does not support a finding of compensable injury, relying primarily on the referee's finding to the same effect. *Second,* Fleming insists that "There is no competent evidence to establish a causal connection between claimant's back condition and his work activities."

Claimant, a recent immigrant from Greece, is a painter and at the time of the hearing was twenty-eight years old. Fleming is a contractor whose busi-

ness is primarily painting. At the time of the alleged injury, claimant was a recently hired employe.

Fleming was performing a painting job for a book distributing firm. On Thursday, May 3, 1973, claimant was working for Fleming on that job. Claimant testified that he and Fleming were moving a bookshelf (to clear room for painting part of the office) and that, in the course of moving the bookshelf, he hurt his back. Claimant testified that he immediately informed Fleming that his back hurt. Fleming's version was that he (Fleming) moved the bookshelf with an electric dolly. He said that the claimant did not help at all in moving the bookshelf but did concede that a few books fell off the shelf and claimant helped pick them up.

There was also testimony from a Mr. Starr who was a department manager at the book firm and present in the area where the claimant was working. Starr agreed that claimant was moving a bookshelf but did not recall anyone else helping him nor hearing any complaints from the claimant about his back at that time. However, Mr. Starr also testified that he was only marginally aware of the claimant's activities and was of course working at his own job.

There were statements admitted into evidence from two of Fleming's employes that the claimant was moving a bookshelf. Neither employe remembered claimant as appearing to have hurt himself at that time.

Claimant testified that he told Fleming after work on Thursday that he had hurt his back. Claimant's wife testified that on Thursday evening claimant was in a "contorted" condition. Claimant also

testified that he told Fleming Friday morning (when Fleming came to pick him up for work) that his back was "out" and that he wanted to see a doctor. On the other hand, Fleming said that the first time he heard about a problem was Friday morning when claimant told him he was feeling bad but mentioned nothing about wanting to see a doctor. Both Fleming and the claimant agreed that Fleming took the claimant to a minister's home Friday morning. The minister prayed for the claimant but apparently to no avail. Fleming said that Mr. Silver, a superintendent at the book firm, told him on Friday that the claimant had been sitting down, not working, for two hours.

Both claimant and his wife testified that claimant saw a chiropractor on Friday evening. Claimant's wife testified that on Friday night claimant was restless and complained of pain. Saturday, claimant was examined at the emergency ward of the Portland Adventist Hospital where he was x-rayed and given medication for pain and another prescription. An appointment was made to see Dr. Schuler (M.D.) the next Monday.

Both claimant and his wife stated (although claimant was somewhat doubtful on the date) that claimant visited the chiropractor again on Sunday. A letter from the chiropractor admitted into evidence confirms that the chiropractor saw the claimant Friday and Sunday.

On Monday claimant saw Dr. Schuler (M.D.) who concluded that the claimant had "an unstable lumbosacral spine with early arthritic changes * * *."

■ We review the case *de novo*. *Sahnow v. Fireman's Fund Ins. Co.*, 260 Or 564, 569, 491 P2d 997

(1971); *Winchester v. Haake,* 3 Or App 198, 199, 472 P2d 840 (1970). Our review of the record convinces us that the claimant did suffer a work-related injury. We therefore affirm the trial court and the Workmen's Compensation Board.

■ We are mindful of our holdings that, in matters involving the credibility of witnesses, the findings of the hearing officer are entitled to considerable weight, *Fredrickson v. Grandma Cookie Co.,* 13 Or App 334, 337-38, 509 P2d 1213 (1973). Yet, such findings are not binding:

"\* \* \* We review *de novo* and must resolve the case as our independent judgment dictates." *Bicknell v. SAIF,* 8 Or App 567, 569, 495 P2d 289 (1972).

In this case, though, the persuasiveness of the referee's conclusion is undermined by other factors. The referee found:

"\* \* \* [B]oth Fleming and claimant have been contradicted several times in this record but \* \* \* neither has impressed the Referee that he is to be believed over the other \* \* \*.

"Accordingly, the Referee looks to the statements of the other persons \* \* \*."

The referee thus indicated that he placed little or no reliance on the two witnesses who offered the most extensive testimony at the hearing. There were only three other witnesses testifying at the hearing: claimant's wife, Mr. Starr, and a Mr. Richardson. Claimant's wife, while her testimony appears not to have greatly impressed the referee, bolstered the claimant's version in several respects. Starr was an employe of Fleming at the time of the injury and at the time of the hearing. As noted previously, his testimony did help to establish that claimant was moving a book-

shelf. Richardson's testimony was not particularly helpful since he was not present at the time of the injury and could only testify on peripheral matters. Thus the weight to be accorded the referee's evaluations of these three witnesses' credibility is considerably circumscribed by the nature and scope of their testimony. Transcribed conversations with three other individuals admitted into evidence afforded the referee no greater insight than we have in evaluating credibility.

While the testimony at the hearing was often imprecise and sometimes confusing because of claimant's difficulty with the English language, three people, other than claimant, did say (in transcribed statements) that claimant was in fact moving a bookshelf. Claimant notified his employer at least by the following day that he was not feeling well and in the space of four days went to a minister, a chiropractor, a hospital emergency room, and a doctor's office. Claimant's suffering was medically documented. While it is conceivable that something other than the strain of moving the bookshelves might have caused the claimant's condition, there is no hint in the record of what other cause that might be.

 Fleming, in claiming there is no competent evidence to establish the necessary causal link between the work and the injury, points to the lack of medical evidence on the point and relies primarily on *Uris v. Compensation Department*, 247 Or 420, 427 P2d 753, 430 P2d 861 (1967). In *Uris*, the court formulated tests fully applicable to the case at bar, noting:

> "In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an un-

complicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury: *DiFiori v. U. S. Rubber Co.* * * *." 247 Or at 426.

1. *Uncomplicated situation:* In *Uris,* the claimant was also working with shelves of books. The medical diagnosis of the problem was strikingly similar: chronic lumbosacral strain. The court noted: "There is nothing very complicated about such an injury and its cause." 247 Or at 427.

2. *Immediate appearance of symptoms:* In *Uris,* the claimant who worked at a college campus was sent to the infirmary the day of the strain but failed to contact another physician for nearly a year. We are convinced from the evidence in the present case that the appearance of the claimant's symptoms was close enough to the time of the injury to qualify as "immediate."

3. *Prompt reporting:* We believe claimant qualifies on this point also. The precise day claimant notified his employer and a physician is not clear, but we find that the claimant was prompt.

4. *Previous good health:* Even Fleming admitted to this. There was no evidence to the contrary.

5. *Absence of contrary expert testimony:* This factor also favors claimant.

In conclusion, it is worth noting that a certain amount of inference is nearly always necessary in

answering questions of causation. Rarely will a medical doctor be at the scene to see the injury as it occurs. Because of this, workmen's compensation claims can always be subject to the argument that *possibly* something else unrelated to the employment intervened to actually cause the injury. Proving a negative is a formidable task. This problem is met in substantial part by the *Uris* guidelines. We believe claimant's case comes within them.

Affirmed.