Argued March 25, reversed and remanded with instructions May 2, reconsideration denied June 8, petition for review allowed June 21, 1977

RUSSELL, *Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Appellant.*

(No. 76-8-244A, CA 7359)

563 P2d 738

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for appellant. With him on

the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Raymond J. Conboy, Portland, argued the cause for respondent. On the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary and Donald N. Atchison, Portland.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

## THORNTON, J.

In this workmen's compensation case a hearings referee granted claimant 15 degrees permanent partial disability for 15 percent loss of use of his left eye; the Workmen's Compensation Board (Board) reversed and granted no permanent disability and the circuit court reversed the Board and granted 35 percent (112 degrees) permanent partial disability for an unscheduled injury. The State Accident Insurance Fund (SAIF) appeals.

Claimant is a machinist and was injured while running a shaper. A tool he was using to cut a groove in a small block broke, flew off and shattered his safety glasses, causing damage to his left eye.

Following the injury successful surgery was performed on claimant's eye and his visual acuity, with a corrective lens, is 20/20, but certain residual, nonacuity defects remain. As Dr. Johnson, a reviewing ophthalmologist, observed:

"Mr. Russell has been most fortunate to obtain 20/20 vision following an injury of this extent, but the corneal scar, altered curvature of the cornea and derangement of the pupil, does result in increased sensitivity to light. The pupil fails to contract sufficiently to shut out the oblique rays of light which can produce eye discomfort as well as headaches. * * *"

In addition to photosensitivity, claimant testified that his eye burns and turns red after reading or performing close tolerance machine work, he has difficulty with depth perception, and headaches follow from intensive use of the eye. As a result of these defects, claimant is precluded from engaging in close tolerance tool and die work or work on jigs, fixtures, small parts or arc welding.

Loss of vision in one eye is a scheduled disability.

The statutory provisions germane to this case are contained in ORS 656.214 as follows:

"(1) As used in this section:

"(a) 'Loss' includes permanent and complete or partial loss of use.

"(b) 'Permanent partial disability' means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, or any other injury known in surgery to be permanent partial disability.

"(2) When permanent partial disability results from an injury, the workman shall receive $70 for each degree stated against such disability as follows:

"* * * * *

"(h) For partial or complete loss of vision of one eye, that proportion of 100 degrees which the loss of monocular vision bears to normal monocular vision. For the purposes of this paragraph, the term 'normal monocular vision' shall be considered as Snellen 20/20 for distance and Snellen 14/14 for near vision with full sensory field.

"(i) For partial loss of vision in both eyes, that proportion of 300 degrees which the combined binocular visual loss bears to normal combined binocular vision. In all cases of partial loss of sight, the percentage of said loss shall be measured with maximum correction. For the purpose of this paragraph, combined binocular visual loss shall be calculated by taking three times the visual loss in the less damaged eye plus the visual loss in the more damaged eye and dividing that amount by four. In the case of individuals with compensable visual loss involving both eyes, either the method of calculation for monocular visual loss or that for combined binocular visual loss shall be used, depending upon which allows the greater award of disability.

"* * * * *

"(5) In all other cases of injury resulting in permanent partial disability, the number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the workman before such injury and without such disability."

Three conceivable approaches to the problem of compensation for residual, nonacuity eye defects

caused by work-related injury are illustrated in this case by the dispositions of the Board, circuit court and referee.

The Board, in its Order on Review, held that eye injuries are scheduled and exclusive and only noncorrectable loss of monocular vision as defined in the statute is compensable. Since claimant's loss of monocular vision was correctable, the Board reasoned that no permanent partial disability was appropriate. The Board's order states:

"* * * The Board now takes the position that ORS 656.214(2)(h)(i), which related to permanent partial disability awards involving partial or complete loss of vision, are wholly unambiguous. These provisions provide only for compensation for loss of eye sight. In the instant case, Dr. Johnson has stated his opinion that claimant's left eye could be corrected to 20/20 vision, therefore, he has no visual loss with correction and, accordingly, is not entitled to any compensation for permanent partial scheduled disability to his left eye. This may appear, at first blush, to be a harsh ruling but the wording of ORS 656.214(2)(h)(i) leaves no room for interpretation."[1]

The circuit court, in reversing the Board, held that claimant's eye injuries were unscheduled and compensable under ORS 656.214(5).

---

[1]This case represents a change in policy by the Workmen's Compensation Board. At least since 1967 the Board has awarded compensation for nonacuity ocular disturbances. *See,* In the Matter of the Compenation of Sam Finley, WCB Case No. 67-148; 1 Van Natta, Workmen's Compensation Rep 55 (1969), where the Board concluded, based on Missouri workmen's compensation regulations, that

"* * * the legislative intent in Oregon is to compensate for loss of vision and that the loss of vision is not restricted to the optimum obtainable under strict clinical conditions. To concede that a workman cannot work because of the adverse effect of daylight on his eyes but to conclude that the legislature intended no compensation for such a disability would work a grave injustice. While regulations similar to those noted in Missouri have not been adopted in Oregon, it appears that a construction of the Oregon law giving an effect commensurate with such a regulation is in order."

The referee relied on *Finley* in awarding claimant 15 percent permanent partial disability.

[ 299 ]

The referee's position, and the position advocated by SAIF on appeal, is that residual nonacuity eye injury is compensable to the extent authorized by the statute (100 degrees) and, as a corollary, that Snellen-measured loss of monocular vision is not the exclusive type of eye injury loss contemplated as compensable by the legislature.

We find the referee's approach to the problem of eye injury loss represents the most reasonable construction of the above cited provisions, and we therefore adopt it.

It is a familiar axiom of statutory construction that a remedial statute must, if possible, be construed liberally to accomplish the purpose for which it was enacted; and that workmen's compensation laws are liberally construed to provide coverage for injured workmen. *See, e.g., Kinney v. S.I.A.C.,* 245 Or 543, 423 P2d 186 (1967); *Newell v. Taylor et al,* 212 Or 522, 527-28, 321 P2d 294 (1958). Contrary to the Board's view, we find no language in ORS 656.214 which discloses a legislative intention to allow compensation only for loss of normal monocular vision as defined in ORS 656.214(2)(h). ORS 656.214(2)(h) and (i) mandate that lens-correctable visual acuity loss as measured on a Snellen scale is not compensable but it does not necessarily follow that loss of monocular vision is the exclusive type of compensable eye injury. The language in ORS 656.214(1)(a) providing that " 'Loss' includes * * * partial loss of use," covers the type of permanent partial eye disability which claimant sustained here.

The circuit court's approach to the problem of partial loss of eye use, if accepted, would represent an anomaly in workmen's compensation law. The circuit court in this case awarded 35 percent or 112 degrees permanent partial disability for unscheduled disability. The circuit court's award represents a greater compensation for residual impairment than would accrue if claimant lost the eye itself.

■ The fact that an anomalous or incongruous result would come from a suggested construction of a statute is an indication that the construction suggested by claimant cannot be the one which the legislature intended. *Semler v. Cook-Waite Lab., Inc.,* 203 Or 139, 278 P2d 150 (1955); *Peters et al. v. McKay et al.,* 195 Or 412, 238 P2d 225, 246 P2d 585 (1952); *Haas v. Myers,* 10 Or App 495, 500 P2d 1068 (1972).

■ We hold that a residual eye injury of the type involved here is injury to a scheduled member covered by ORS 656.214(1)(a); and that where the injury is confined to a scheduled member and there is no impairment of any other part of the body because of the injury, compensation is limited to that provided in the statute for loss of the scheduled member. *Webb v. Forrest Currell Lumber Co.,* 68 NM 187, 360 P2d 380 (1961). *See, Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971); 2 Larson, Workmen's Compensation § 58.20 (1976).

Accordingly we reverse and remand to the Board for its reconsideration, in the light of this opinion, of the extent of claimant's residual eye injury.

Reversed and remanded with instructions.