Argued September 8, 1977, reversed and remanded to the Court of Appeals
February 14, 1978

RUSSELL, *Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(TC 76-8-244A, CA 7359, SC 25312)

574 P2d 653

Raymond J. Conboy, Portland, argued the cause for petitioner. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary and Donald N. Atchison, Portland.

[ 353 ]

Kevin L. Mannix, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, Salem, and W. Michael Gillette, Solicitor General, Salem.

LENT, J.

*Appeal from Circuit Court, Clackamas County. Dale Jacobs, Judge. 29 Or App 295, 563 P2d 738 (1977).

## LENT, J.

There are two issues in this case. The first is whether a claimant who suffers permanent partial disability but no loss of visual acuity (with maximum correction) as a result of trauma to the eye is entitled to any award of compensation for permanent disability under the Oregon Workers' Compensation Law.[1] If the first issue is resolved in the claimant's favor, the second issue is whether the award of compensation for permanent partial disability should be on a "scheduled" or "unscheduled" basis. We hold, with respect to the first issue, that the claimant is entitled to an award of compensation for permanent partial disability and, with respect to the second issue, that it must be on an unscheduled basis.

ORS 656.214, in pertinent part, provides as follows:

"(1) As used in this section:

"(a) 'Loss' includes permanent and complete or partial loss of use.

"(b) 'Permanent partial disability' means * * * loss of one eye * * *.

"(2) When permanent partial disability results from an injury, the worker shall receive $85[2] for each degree stated against such disability as follows:

"* * * * *

"(h) For partial or complete loss of vision of one eye, that proportion of 100 degrees which the loss of monocular vision bears to normal monocular vision. For the purposes of this paragraph, the term 'normal monocular vision' shall be considered as Snellen 20/20 for distance and Snellen 14/14 for near vision with full sensory field.

"(i) * * * In all cases of partial loss of sight, the percentage of said loss shall be measured with maximum correction. * * *

"* * * * *

---

[1] At the time of this injury, December 30, 1974, the law was entitled "Workmen's Compensation Law." In addition to changing the name, the 1977 Legislature also amended the law, but none of the amendments concerned the issues with which we deal in this case.

[2] $70 at the time of this injury.

"(5) In all other cases of injury resulting in permanent partial disability, the number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability."

Claimant, a machinist, was injured when a tool he was using broke and a piece flew off and struck his safety glasses. The glasses shattered, causing injury to his left eye as follows: traumatic corneal and scleral lacerations with secondary prolapsed iris. Immediate surgery was performed by way of excision of the prolapsed iris and suture of the corneal laceration and restoration of the anterior chamber. Claimant was temporarily totally disabled until February 24, 1975, and temporarily partially disabled from February 25, 1975, through March 3, 1975.

Eventually claimant's visual acuity, with a corrective lens, was found to be Snellen 20/20. There was uncontroverted expert testimony, however, that claimant's injury resulted in his left eye being overly sensitive to light. This was caused by the corneal scar, altered curvature of the cornea, and derangement of the pupil, which combined to prevent the pupil from contracting sufficiently to shut out oblique rays of light. Claimant himself testified (which the referee apparently accepted) that this condition caused him discomfort and headaches and precluded him from engaging in close tolerance tool and die work on jigs, fixtures, small parts or arc welding.

On August 27, 1975, the Evaluation Division of the Workers' Compensation Board (Board) entered its determination order, finding that no permanent disability resulted. Claimant filed a request for hearing, and the referee, relying upon a prior Board decision directly in point, granted claimant an award of compensation "of 15 degrees for partial loss of the left eye" on the basis that this was a "scheduled disability."

Upon review the Board expressly overruled its earlier decision on which the referee had relied and

held that the law provides "only for compensation for loss of eye sight" and that since claimant had no loss of "eye sight" or "visual loss" he was not entitled to any compensation for permanent disability.[3] The Board did not address claimant's contention that he was entitled to an award of compensation for unscheduled disability.

Claimant then appealed to the circuit court, which held that he was entitled to an award of compensation "for 35% permanent partial disability for unscheduled disability" under ORS 656.214(5).

The insurer, on appeal to the Court of Appeals, adopted the position of the referee:

"* * * [R]esidual nonacuity eye injury is compensable to the extent authorized by the statute (100 degrees) and, as a corollary, that Snellen-measured loss of monocular vision is not the exclusive type of eye injury loss contemplated as compensable by the legislature." *Russell v. SAIF,* 29 Or App 295, 300, 563 P2d 738 (1977).

The Court of Appeals purported to adopt the language just quoted as the most reasonable construction of the statute and expressly held that a residual eye injury "of the type involved here" is injury to a "scheduled member" covered by ORS 656.214(1)(a). The Court of Appeals further held that where the injury is confined to the "scheduled member" and there is no "impairment"[4] of any other part of the body because of the injury, compensation is limited to that awarded for scheduled disability.

We accepted review because of the confusion of positions at the various levels of review and because the issues raised were heretofore unresolved by this court.

---

[3]In addition to the sequelae found by the referee, the Board upon its review of the record also found: "Claimant does close tolerance work all day which causes his eye to burn and redden; he also has difficulty with depth perception and has trouble centering the lathes and his cutting tools."

[4]The law does not actually deal with impairment as such. Impairment is a medical concept. The law deals with disability which results from impairment, disability being the issue with which the law is concerned.

[ 357 ]

The claimant, the insurer, the referee, the Board, the circuit court, the Court of Appeals, and this court are all in agreement that there is no evidence of loss of visual acuity "with maximum correction." Everyone concerned, therefore, is in agreement that no award of compensation for permanent disability may be made under ORS 656.214 (2) (h) and (i). On the other hand, everyone concerned agrees that claimant has sustained some permanent disability as a result of his injury and its sequelae. The Board alone believed this disability to be noncompensable because of its position that there had been no loss of visual acuity.

■ We hold the disability is compensable because there has been a permanent and partial loss of use of claimant's eye, which by definition is permanent partial disability. ORS 656.214(1) (a) and (b).

The remaining question to be resolved, therefore, is whether compensation is to be determined under ORS 656.214(1) (a) and (b) or under ORS 656.214(5). The Court of Appeals found ORS 656.214(1) (a) to be the applicable provision,[5] found that claimant's injury was confined to a partial loss of use of one eye, and remanded to the Board to consider what award should be made for permanent partial disability for scheduled disability.

As we view ORS 656.214(1), it is concerned with definitions. Subsections (2) and (5) are the pertinent operative subsections for the grants of statutory awards of compensation for permanent partial disability. Subsection (2) deals entirely with scheduled disabilities. Subsection (5) deals with *all other* instances of permanent partial disability and therefore with those which are in common parlance called unscheduled disabilities.

---

[5] Although the Court of Appeals mentioned only subparagraph (a), it is implicit in that court's decision that subparagraph (b) of subsection (1) of the statute is also applicable. Otherwise, there is no basis for awarding disability on a scheduled basis other than loss of visual acuity for partial or complete loss of use of an eye.

■ The only reference in subsection (2) which concerns the eye in any way whatsoever is that to be found in subparagraphs (h) and (i), *supra.* Those subparagraphs are concerned exclusively with loss of visual acuity. The disability with which we are here concerned is not loss of visual acuity. It follows that whatever disability this claimant has sustained as a result of his compensable accidental injury to his eye must be rated under subsection (5).

■ It is not our function to review the evidence. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). It appears, however, that certain of the sequelae such as irritability, nervousness, and headaches,[6] if found to be a result of the injury to the eye, are just as compensable as the structural damage to the eye and the sequelae which are confined to the eye itself. The proper award for unscheduled disability should be determined by taking into consideration all sequelae established by the evidence.

We recognize that cases from other jurisdictions are many times of little help in construing and interpreting compensation laws because of the difference in wording from state to state of particular provisions. There are cases from other jurisdictions which support the conclusion we have reached here, however. *See Zuza v. Ford Motor Company,* 84 NJ Super 588, 203 A2d 105 (1964), *aff'd* 44 NJ 320, 208 A2d 802 (1965); *Englishman v. Faver Cement Block Company,* 137 NJ Super 313, 349 A2d 75 (1975) (total loss of vision in one eye plus post-traumatic anxiety neurosis, headaches and structural changes to the eye); *Torres v. Industrial Commission of Arizona,* 16 Ariz App 404, 493 P2d 1209 (1972); *Clayton v. Employers Mutual Liability Ins. Co. of Wisconsin,* 480 SW2d 487 (Tex Civ App 1972) (removal of one eye with other sequelae).

___

[6]These particular sequelae demonstrate a form of "spreading disability." *See Kajundzich v. State Ind. Acc. Com.,* 164 Or 510, 102 P2d 924 (1940) (disability spreading from foot to leg); *Walker v. Compensation Department,* 248 Or 195, 432 P2d 1018 (1967) (disability spreading from back to leg).

*See also Dodier v. State Dept. of Labor,* 373 A2d 341 (NH 1977); *Webb v. Hamilton,* 78 NM 647, 436 P2d 507 (1968).

The Court of Appeals was troubled by what it felt to be an anomalous and incongruous result if disability such as this were to be rated under ORS 656.214(5). As has been demonstrated, however, the legislature has provided this result. The anomaly, if it exists, is of the legislature's making. If that body intends something else, the proper place to amend the law is in that body.

The case must be remanded for determination of the proper award of compensation for permanent partial disability for unscheduled disability. The question remains as to where the cause must be remanded. The Court of Appeals believed that the Board should be given an opportunity to assess the disability and remanded to that administrative agency. Since with respect to this particular claim the Court of Appeals had the power of de novo review, we are somewhat puzzled as to why the court did not make its own independent evaluation. This court no longer has the power to review de novo under *Sahnow v. Fireman's Fund Ins. Co., supra.* We remand, therefore, to the Court of Appeals for such further proceedings as it may order in accordance with this opinion. In so doing, we intend to leave to the Court of Appeals a decision whether to resolve finally the case or to remand to the Board.

Reversed and remanded to the Court of Appeals.