Argued and submitted October 22, reversed December 8, 1980

In the Matter of the Compensation of
Judy Madewell, Claimant.

MADEWELL,
*Petitioner - Cross-Respondent,*

*v.*

SALVATION ARMY,
*Respondent - Cross-Petitioner.*

(WCB 78-992, CA 17666)

Michael J. Kavanaugh, Portland, argued the cause for petitioner - cross-respondent. With him on the briefs was Kenneth M. Montgomery, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent - cross-petitioner. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

**ROBERTS, J.**

Claimant, while employed as a supervisor for the Salvation Army, injured her back on November 7, 1977, while pulling a clothing cart estimated to weigh some 500 to 750 pounds off an elevator. This was work she was not accustomed to doing, and she apparently was filling in, as her job required her to do, during a shortage of male trainees who did the heavier work. She reported the injury to her supervisor immediately and filed a formal notice of injury on November 21. The insurer denied the claim by a letter dated December 9, 1977. Claimant did not receive the letter, however, until December 19. She filed a request for a hearing on February 7, 1978, which was received by the Workers' Compensation Board on February 8. Defendant contended the request for the hearing was not timely filed under ORS 656.319(1)(a) and ORS 656.262(6), because the request was received on the 61st day following the denial and the statutes require the receipt of the request within no more than 60 days. The referee found good cause for the delay pursuant to ORS 656.319(1)(b) and ordered the carrier to accept the claim. The Board reversed. Claimant appeals and the employer cross-appeals on the failure of claimant to prove a compensable claim. We reverse the Board and reinstate the order of the referee.

ORS 656.262(6) states that "The worker may request a hearing on the denial [of a claim for compensation] at any time within 60 days after the mailing of the notice of denial." ORS 656.319(1) provides:

"(1)   With respect to objection by a claimant to denial of a claim for compensation under ORS 656.262, a hearing thereon shall not be granted and the claim shall not be enforceable unless:

"(a)   A request for hearing is filed not later than the 60th day after the claimant was notified of the denial; * * *

"* * * * *."

"Notified" means deposited in the mails. *Norton v. Compensation Department,* 252 Or 75, 448 P2d 382 (1968). The employer's letter denying the claim for compensation was dated December 9, but there was no evidence of the date on which the letter was actually mailed. In order to determine when the 60 days were tolled, there must be some showing

of when the letter was mailed.[1] The letter from the employer contained the wording required by OAR 436-83-120 that "If you think this denial is not right, within 60 days after the date of this letter you must file a letter with the Hearings Division, Workmens' Compensation Board.* * *" In order for this language to be consistent with the statute and our interpretation of it, "date of this letter" must be interpreted to mean the date the letter was mailed, and not the date on the body of the letter itself. We believe this to be consistent with another of the Workers' Compensation Administrative Rules, OAR 436-83-130, requiring that notice of a denial or other notice from which statutory time runs against the claimant shall be in writing and "should in every case be delivered by registered or certified mail with return receipt requested." While such a procedure certainly is meant to provide proof of whether the claimant has been notified at all, it provides a record of the date mailed as well as the date received. The denial was not sent by registered or certified mail and the employer offered no proof of the mailing date. While there is a presumption that a writing is truly dated,[2] and that a letter directed and mailed was received in the regular course of the mail,[3] there is no presumption that a letter is mailed on the day it is dated or on the day it was written. *Associates Discount v. Barstow,* 2 Ohio Misc 73, 205 NE2d 667, 669 (1964); *Cowan v. Tremble et al,* 111 Cal App 458, 296 P 91, 94 (1931); 29 Am Jur 2d, § 193, at 246-7 (1973); 25 ALR 9,22 (1923). Respondent has not put on any evidence to show the filing of the claim was untimely. We thus treat the claim as timely and proceed to the merits.[4]

---

[1] This is particularly pertinent since the ten-day gap between the date on the letter and the date it was received indicates it was not mailed on the day it was written. It is also worth noting that December 9, 1977, was a Friday, and even a mailing on the next business day would have trimmed three days from claimant's response period.

[2] ORS 41.360(23).

[3] ORS 41.360(24).

[4] Because we decide there is no evidence the filing was late, we do not reach the issue of whether claimant had good cause for a late filing.

■ ■ Where a claimant's injuries are of such a nature as to require skilled and professional persons to establish causation and extent, a claimant must meet the burden of proof through the use of expert medical evidence. *Larson v. State Ind. Acc. Com.,* 209 Or 389, 399, 307 P2d 314 (1957); *Hart v. SAIF,* 31 Or App 181, 570 P2d 92 (1977). However, such testimony is not required in every situation. Where neither the injury nor its cause is complicated, and there is the immediate appearance of symptoms, the prompt reporting of the occurrence to a superior and consultation with a physician, and where the plaintiff was previously in good health and free from any disability of the kind involved, the Supreme Court has said that medical testimony as to causation is unnecessary. *Uris v. Compensation Department,* 247 Or 420, 426, 427 P2d 753, 430 P2d 861 (1967). The court added that

> "A further relevant factor is the absence of expert testimony that the alleged precipitating event could *not* have been the cause of the injury." *Id.* (Citation omitted.) (Emphasis supplied.)

This is a case very like *Uris.* In that case:

> "Plaintiff, who had had no trouble with his back since he was 13 or 14 years of age, reached out to prevent a truckload of books from toppling over and as he did so felt a sharp pain in his back. Plaintiff was, of course, a competent witness as to the pain he suffered and his impaired ability to perform physical labor: *Wilson v. SIAC,* 162 Or 588, 599, 94 P2d 129. He reported the incident to his employer and went immediately to a doctor, who found a back injury of undisclosed character and extent. From that time forward he felt the effect of the injury and ultimately, when the pain became worse, he consulted a doctor, who diagnosed the condition as chronic lumbosacral (low back) strain. There is nothing very complicated about such an injury and its cause. Neither was it beyond the competence of a jury of laymen to infer from the entire testimony that the sudden movement to which the plaintiff testified caused the pain he felt at that moment and the condition from which he suffered thereafter." 247 Or at 427.

Since *Uris,* both this court and the Supreme Court have found, in more complicated fact situations than the one before us, other cases of back sprain to be simple enough situations that medical testimony as to causation is

not required. *See Austin v. Sisters of Charity,* 256 Or 179, 470 P2d 939 (1970); *Seriganis v. Fleming,* 20 Or App 659, 533 P2d 183 (1975).[5] We hold that claimant in this case has met the *Uris* test:

1. *Uncomplicated situation:* Claimant testified she was "pulling and tugging" in an attempt to roll a 500-750 pound clothing cart off an elevator, a job she did not usually perform, when she pulled her hip, her stomach muscles, "everything." Three doctors diagnosed lumbosacral or low back strain or pain, which is the same injury as in both *Uris* and *Seriganis,* where it was found to be "nothing very complicated." The fact situation and the injury are strikingly similar to those of the two previous cases.

2. *Immediate appearance of symptoms:* Claimant testified she felt an immediate physical distress and reported it to her supervisor about an hour later. A witness testified claimant made an immediate sound of distress, held her back and contorted her face indicating "that she had some problem."

3. *Prompt reporting:* Claimant reported the accident to her employer within the hour, and that same day saw her family physician, complaining of severe stomach pains. She saw another physician, an internist, a week later.

4. *Previous good health:* Claimant's co-worker testified she was a "hard worker" who did a lot of work prior to the injury, and claimant herself testified she had

---

[5] In *Austin,* the claimant had a history of back trouble, including surgery for a ruptured disc and a spinal fusion. While being x-rayed for stomach and gall bladder problems, the technician wrenched claimant's back in positioning him on the examining table. The court found that despite evidence tending to show the consequent pain could have been caused by other things, including a virus, there was ample evidence from which a jury could find the technician's action to be the cause of the injury. 256 Or at 182-83. The claimant in *Seriganis* asserted he injured his back in moving a bookshelf. The defendant denied that claimant was moving a bookshelf at all, and the three witnesses who testified claimant was moving the shelf denied he made any complaint of pain. The court nevertheless found for the claimant, noting

"* * * [w]hile it is conceivable that something other than the strain of moving the bookshelves might have caused the claimant's condition, there is no hint in the record of what other cause that might be." *Seriganis v. Fleming, supra,* 20 Or App at 665.

pursued her normal activities the weekend before the accident and had not been seeing her family physician, who was a gynecologist. She testified she had at one time been a farm laborer. There was no evidence to indicate she was not in normal good health prior to the accident, or that she had previously had any back problems.

5. *Absence of contrary expert testimony:* There was no expert testimony offered that the strain of pulling the clothing cart could not have been the cause of the injury. The first internist who saw claimant, and originally diagnosed a bowel obstruction or possible virus with secondary hip and lumbar symptoms, later changed his diagnosis to "lumbosacral pain of uncertain cause." The only doctor who did not find back strain diagnosed possible gluteal tendonitis, a condition which also may be caused by trauma. Of the two doctors who ventured an opinion as to the cause of the injury, one believed it to be an industrial injury, and the second, who could not be certain the injury was caused by claimant's work, noted that the work could certainly have aggravated the pain.

We believe claimant's case comes within the guidelines set by *Uris.* The decision of the Board is reversed and the referee's opinion reinstated.

Reversed.