Argued and submitted May 8, reversed and remanded
for further proceedings June 15, 1981

In the Matter of the Compensation of
Ervin Edge, Claimant.

EDGE,
*Petitioner,*

*v.*

JELD-WEN,
*Respondent.*

(WCB No. 79-4080, CA 19742)

629 P2d 841

Robert K. Udziela, Portland, argued the cause for petitioner. On the brief was David Vandenberg, Jr., Klamath Falls.

Brian L. Pocock, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant appeals from a determination by the Workers' Compensation Board (Board) affirming the referee's opinion and order, which affirmed the determination order awarding claimant 15 percent permanent partial disability for unscheduled low back injury. Claimant asserts that he is permanently totally disabled. The referee found that claimant had not presented sufficient expert medical evidence to support a finding of compensability; the original award of 15 percent was left standing because the employer had not raised compensability as an issue, or asked that the award be reduced. On *de novo* review, we conclude that claimant's disability is compensable; because neither the referee nor the Board focused on the extent of claimant's disability, we reverse and remand.

At the time of the hearing, claimant was 54 years old. He had been a mill laborer for 35 years. On August 7, 1978, claimant slipped when handling a large paint-drip pan and experienced immediate jabbing pain in his low back, left buttock and thigh. He thought he had pulled a muscle. The pain, which claimant described as a kind of "charley horse," steadily worsened. Claimant saw a doctor three days later and, after seeing another doctor, required hospitalization two weeks after the accident. During that period he was able to get around only by using a "walker." The diagnosis, following a myelogram, was severe root compression at S1 secondary to an extruded disc at L5. On September 1, 1978, a lumbar laminectomy was performed by Dr. Campagna. Subsequently, on November 6, 1978, Dr. Campagna wrote to the employer that the claimant's symptoms at that time were related to the accident of August 7, 1978.

Claimant had polio when he was two years old. As a result, he was pigeon-toed, and his right leg was slightly smaller than the left, which caused a slight limp. He also had lumbar spondylosis, or stiffening of the lumbar spine. His former supervisor testified that claimant had experienced some difficulty in bending prior to the injury. Claimant testified he had no low back or leg pain prior to the accident: he could bowl, play baseball and perform other activities. He had never sustained any injury, on or

off the job, which had prevented him from working success-
fully as a manual laborer, which he had done all his adult
life.

Dr. Campagna reported on November 27, 1978,
that neither the polio nor the spondylosis had any bearing
on the industrial injury, which we understand to mean that
neither of those conditions was worsened by the injury. On
March 2, 1979, the physician reported that claimant had
made a good recovery from disc surgery, and that his
residual problems were caused by his lumbar spondylosis
and the polio. By letter of July 13, 1979, the doctor ex-
pressed the opinion that claimant's polio residuals had not
been aggravated by the accident and that claimant was
permanently and totally disabled.

At the time of hearing in November, 1979, claim-
ant testified that he still had pain in his left leg at the calf
and on the left side of his lower back radiating both across
and upward. His toes were numb, and his left leg would not
reliably support him. He could not twist or turn, and his
ability to bend or lift was minimal. Claimant was extreme-
ly limited in the activities he could do. He was observed by
a private investigator while nailing weatherstripping
around a door for a few minutes, resting in the middle of
that activity, and also while tending a fire. The referee
found, and we agree, that the surveillance evidence did not
discredit claimant's testimony as to his limitations.

In a post-hearing deposition taken on January 10,
1980, Dr. Campagna stated that claimant was permanently
and totally disabled. He stated that claimant was honest
and was not exaggerating his complaints. He emphasized
that neither claimant's polio residuals nor the spondylosis
was worsened by the industrial accident or had thereafter
changed. Dr. Campagna stated that claimant had made an
excellent recovery from the disc surgery with no detectable
residuals from it. Whether or not that statement means
that claimant no longer suffered disabling symptoms from
the injury, as opposed to the surgery, is not entirely clear.
However, the physician expressed puzzlement at the cause
of claimant's current problems, attributed them to the old
polio and spondylosis (neither of which, he said, had wor-
sened since the accident), which led him to suggest,

somewhat implausibly, that claimant had been working for many years when he may have been totally disabled *prior* to the industrial injury.

■      Inconclusive medical evidence is not necessarily fatal to a claimant's case. *Mueller v. SAIF,* 33 Or App 31, 35, 575 P2d 673 (1978). In *Briggs v. SAIF,* 36 Or App 709, 713, 585 P2d 719 (1978), we found that the industrial injury there involved was a substantial contributing factor to the claimant's disabling condition, despite the lack of medical evidence directly to that effect, where no physician expressly ruled out that finding and where one doctor implied that a lesser part of the trouble stemmed from the injury.

■      Here, the undisputed medical evidence is that the herniated disc was caused by the industrial injury and that claimant's post-surgery symptoms were related to that injury,[1] although his pre-existing conditions imposed some physical limitations. The only confusion stems from the later, and apparently inconsistent, statement of the physician that there were no residuals from the disc surgery; however, the record does not reveal whether the doctor had seen claimant within the six months prior to the deposition. The fact is that despite pre-existing conditions of polio residuals and spondylosis, claimant had been able to support himself and his family doing manual labor up until the time of the industrial injury. The symptoms he experienced immediately after the injury were substantially the same as those described at the hearing, although more severe and disabling. Two months *after* the surgery, his physician attributed claimant's symptoms to the industrial injury. The physician expressly stated his opinion that the industrial injury did not cause changes in the claimant's pre-existing polio residuals or spondylosis. No other off-the-job

---

[1] Concededly, the medical problem is not uncomplicated and therefore requires medical evidence to establish causation. *Uris v. Compensation Department,* 247 Or 420, 426-27, 427 P2d 753, 430 P2d 861 (1967). In *Uris,* the Supreme Court held that medical testimony was unnecessary to make a prima facie case of causation where the situation was uncomplicated, the symptoms appeared immediately, the occurrence was promptly reported at work and to a physician, the claimant was previously free from disability of the kind involved, and no expert testified that the alleged precipitating event could not have been the cause of the injury. A prima facie case of causation of the disc problem, at least, was made here. Furthermore, the employer did not contest causation before the referee.

injury or other cause of the physical problems has been suggested. We do not believe that the physician's assertion that claimant made an excellent recovery from the disc surgery rules out the conclusion that the industrial accident was a "significant contributing factor" to the existing disabling condition. *Briggs v. SAIF, supra,* 36 Or App at 712. The most reasonable conclusion on this record is that the industrial accident was such a factor.

■ ■ Our finding of compensability raises the question of the extent of claimant's permanent disability. It is clear that he is more than 15 percent disabled, but whether he is totally disabled is more problematical. The referee noted in passing that the medical and lay evidence in this case indicated that claimant was "permanently and possibly totally disabled," but neither the referee nor the Board focused clearly on the issue of the extent of disability. As we have noted before, the Board is generally presumed to have expertise in determining the extent of disability. *See, e.g., Russell v. SAIF,* 33 Or App 153, 155, 576 P2d 376, *rev'd on other grounds* 281 Or 353, 574 P2d 653 (1978). Although this court in the exercise of its *de novo* function is empowered to make its own independent evaluation, *Russell v. SAIF,* 281 Or 353, 360, 574 P2d 653 (1978), where, as here, neither the referee nor the Board has reached that issue, we consider it more appropriate to remand to the Board to take whatever action it deems appropriate to determine the extent of claimant's permanent disability.

Reversed and remanded for further proceedings.