Argued and submitted September 23, reversed and remanded with instructions to accept claimant's claim November 2, 1981

In the Matter of the Compensation of
Frank A. Hamel, Claimant.

HAMEL,
*Petitioner,*

*v.*

TRI METROPOLITAN TRANSPORTATION
DISTRICT OF OREGON et al,
*Respondents.*

(WCB Case No. 79-00690, CA A21206)

635 P2d 662

Don G. Swink, Portland, argued the cause and filed the brief for petitioner.

Ridgway K. Foley, Jr., Portland, argued the cause for respondents. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

**WARDEN, J.**

The issue in this case is whether claimant has established the compensability of a herniated disc injury. Claimant appeals from a determination by the Workers' Compensation Board affirming the referee, who found that claimant had failed to prove his claim.[1] On *de novo* review, we reverse and remand.

Claimant is a bus driver, age 37 at time of hearing, who contends that he ruptured a disc while driving a city bus on November 21, 1978. Claimant had returned from a ten-day vacation and reported for work November 20. He spent approximately two hours in the morning and two hours in the afternoon waiting at the bus office, only to be told his runs were cancelled for that day. There is no evidence that claimant was then experiencing any back pain. On November 21, claimant reported again for work and was given a 40-foot, "1000 series" bus to drive on his usual run to Aloha. The 1000 series buses at that time did not have power steering, although that feature was later added as a result, in part, of driver complaints.

On the morning of the 21st, there were icy spots on the road, particularly in shaded areas. Claimant testified that driving the bus under icy conditions was a tense experience: "[T]he bus would slide and skid on icy spots, and you'd be very uptight and nervous and tense to try to keep it under control and super-cautious, too, to drive conservatively." Steering under those conditions, testified claimant, required the use of his entire body. At the end of the 45-minute run, claimant first became aware of a sharp pain in his low back and right hip. This pain became progressively worse throughout the day. At home (between runs and after work) claimant attempted to apply home remedies without success. Finally, the pain was so severe that, unable to sleep, claimant telephoned his company's dispatch office at 2:30 a.m. on Wednesday morning to report in sick for that day.

On November 22, claimant saw a doctor who noted that he had back pain and that x-rays showed a normal

---

[1] Claimant does not challenge the referee's ruling that the employer's denial of January 22, 1979, was reasonable.

lumbosacral spine. He was told by the doctor to return the following Monday. The next day claimant noticed numbness in his right large toe and increased low back pain on sitting. On the following Monday, claimant's doctor referred him to Dr. Cruickshank. After myelography was done and a herniated disc at the L-5-S-1 level diagnosed, Dr. Cruickshank performed a laminectomy on December 6, 1978.

The relevant portion of a letter of inquiry sent to Dr. Cruickshank by the insurer states:

"When I talked to you by phone on January 18, I explained to you the onset of symptoms as Mr. Hamel had told us regarding his back problem, *and I explained to you the various physical activities Mr. Hamel is involved in away from work.* I asked you at that time what your opinion would be in terms of medical probability as to the cause of Mr. Hamel's herniated disc which you treated him for. At that time, you stated it was a very difficult question to answer, but *because of the physical work which Mr. Hamel had done away from his job and that there was no trauma involved in driving a bus,* it would be more probable that the physical work would cause the herniated disc than sitting and driving a bus. If your conclusions are still the same now as they were then, please state this. * * *" (Emphasis added.)

In reply, Dr. Cruickshank wrote:

"In response to the second question, I can only repeat that which I told you in our telephone conversation, that is that the question is extremely difficult to answer in that ruptured discs are known to occur in people who have had no good history of trauma, that is injury. The simple act of turning over in bed or bending over to pick up a handkerchief off the floor might well result in a herniated disc. However, from the point of view of medical probability, it would be more probable that physical work, such as cutting, splitting and carrying wood, operating a motorcycle over rough ground, such as is done on trails through the woods, would cause a ruptured disc than the work involved in sitting in a bus seat and operating a bus."

In July, 1979, another orthopedic physician evaluated claimant and reported:

"There is no question that the genesis of a herniated intervertebral disc is degenerative changes referable to the disc that do no [*sic*] happen instantaneously but rather do

occur over a prolonged period of time. But the failure in this case, that is the actual moment when the nuclear component became decompensated, appears to have occurred at work."

The referee found that claimant failed to prove his claim because medical causation was not established:

"I find from the facts that claimant's condition is of a complicated nature and therefore requires expert medical evidence to establish causation. The treating physician, Dr. Cruickshank opined physical work such as cutting, splitting and carrying wood would more probably cause a ruptured disc than operating a bus. At the time he rendered his opinion he had the benefit of claimant's statement concerning the type of bus and road conditions that had existed. Dr. Hazel evaluated claimant and indicated his disc rupture occurred at work, however he failed to state it was caused or aggravated by the work effort. The best that can be determined from his statement is that the condition coincidentally occurred on the job. Neither of the foregoing medical authorities establishes causation. I find claimant has failed to prove his claim."

The record does not persuade us that claimant had cut, split or carried wood during his vacation or had recently ridden a trail bike over rough ground, let alone that he had recently experienced any off-the-job trauma doing any of those things, as suggested by the insurer's letter to Dr. Cruickshank. The record is devoid of evidence rebutting claimant's account of events leading up to the reported incident. Claimant vigorously denied that he had ridden a trail bike over rough ground in the last three years. Although he had cut wood during the fall, he did not recall doing so during his vacation; he readily remembered other activities he did during that time.

In an apparent attempt to demonstrate that claimant was not seriously injured on the job, the insurer also argues that claimant split firewood the day after first seeing the doctor. Claimant testified at the hearing that he or his wife or one of his five sons, ranging in age from 15 years down, may or may not have split pieces of wood three inches in diameter on that day (which was Thanksgiving day) to fuel the fireplace, but he could not really recall. That testimony was virtually unchanged from what claimant had told an investigator in his statement recorded less

than a week after his surgery. We conclude that claimant's version of the injury is not put in doubt by these insinuations, absent proof of injurious pre- or post-injury activities. We find claimant's account to be credible. We are not foreclosed from doing so, particularly since the referee made no finding on credibility.

■     With regard to the issue of medical proof, where a claimant's injuries are such to require skilled and professional persons to establish causation and extent, a claimant must adduce expert medical evidence to sustain the burden of proof. *Larson v. State Ind. Acc. Com.,* 209 Or 389, 399, 307 P2d 314 (1957). Under certain circumstances such expert testimony is not required. *See Madewell v. Salvation Army,* 49 Or App 713, 717, 620 P2d 953 (1980) (uncomplicated injury promptly reported and treated with no prior history). In *Madewell,* the injury was diagnosed only as low back pain; here, we have the more complicated diagnosis of a ruptured disc. Claimant did present undisputed medical evidence showing that he had suffered a ruptured disc, and that relatively minor activity can trigger the herniation of a vertebral disc. The requirement of medical proof is satisfied in this case. In this type of case, there is no requirement that the expert medical evidence must link *specific* exertion to the compensable condition. *But see Batdorf v. SAIF,* 54 Or App 496, 635 P2d 396 (1981) (citing heart attack cases). Dr. Cruickshank's opinion is broad enough that we can infer an affirmative reply to the question whether claimant's driving probably caused the injury. The physician is not a trier of fact in workers' compensation proceedings. We thus give little weight to that part of Dr. Cruickshank's opinion responding to the insurer's question concerning wood cutting and trail riding, facts not proved at the hearing, other than to note that it supports the *general* proposition that greater physical exertion is more likely than sedentary work to cause a ruptured disc.

■     Although driving a bus is sedentary work, it is undisputed that steering that particular bus under those conditions required the use of claimant's entire body. Here, we have found claimant's account of the injury to be more probable than not. Furthermore, all medical histories related by claimant pertaining to this injury are consistent.

The medical evidence supports the proposition that the work-connected event, *i.e.,* the driving, triggered the injury, and we are entitled, under all the circumstances, to draw the conclusion that the bus driving was a "significant contributing factor" to the herniation of the disc. *Cf. Edge v. Jeld-Wen,* 52 Or App 725, 730, 629 P2d 841 (1981) (inconsistent medical evidence did not rule out compensability of herniated disc residuals).

We hold that claimant's injury is compensable, and we remand the case to the Board with instructions to require respondents to accept claimant's claim as compensable.