Argued and submitted October 8, affirmed December 8, 1982

In the Matter of the Compensation of
Richard R. Miller, Claimant.

**MILLER,**
*Petitioner,*

*v.*

**STATE ACCIDENT INSURANCE FUND
CORPORATION,**
*Respondent.*

(WCB No. 81-06585, CA A24589)

654 P2d 1139

Michael N. Gutzler, Salem, argued the cause for petitioner. With him on the briefs was Allen & Vick, Salem.

Donna Parton, Salem, argued the cause for respondent. On the brief was Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Compensability is the issue in this workers' compensation case. The question is whether a ruptured intevertebral disc is causally related to an earlier disc injury and operation at a different level and, therefore, compensable. The Workers' Compensation Board (Board) affirmed the referee's opinion and order upholding denial of the claim, and claimant petitions for review.

On November 13, 1979, claimant injured his back while attempting to hook a trailer to a tractor. After conservative treatment failed, a myelogram was performed, which revealed a herniated disc fragment at the L5-S1 intervertebral disc level. Claimant's treating physician, Dr. Shaw, performed a discectomy on January 18, 1980, at the L5-S1 level. Claimant's recovery from surgery was long and difficult. On the second postoperative day, he developed a severe cough and experienced back pain that radiated into both legs, particularly the right one. His lung problem was diagnosed as pneumococcal pneumonia. Disc space infection was suspected, but a bone scan showed no evidence of it. At the time of his discharge from the hospital on February 11, 1980, he had minimal pain in his back and right gluteal area. His left leg pain had subsided, but he had a pronounced lumbosacral tilt.

Dr. Shaw continued to see claimant on an outpatient basis. He examined claimant on July 16, 1980. Claimant still complained of pain in the low back and the front of the left thigh, particularly after prolonged sitting or standing, but Dr. Shaw was of the opinion that his condition was medically stationary at that time. On September 18, 1980, by determination order, claimant was awarded 15 percent unscheduled permanent partial disability resulting from the back injury. The award was later increased to 22.5 percent by stipulation.

In May, 1981, claimant experienced an acute exacerbation of his left hip and leg pain. Bed rest did not relieve the pain, and claimant was hospitalized on June 11, 1981. A myelogram revealed a large extradural defect on the left side, this time at the L4-5 level. The myelogram also showed "only minimal asymmetry at the L5-S1 level

without a defect or post-operative change at this level." An electromyogram (EMG) indicated an L5 nerve root impairment and "marked abnormalities" in muscles of the lower left extremity. On June 18, 1981, Dr. Shaw wrote to claimant's attorney:

> "Richard's back problem is obviously getting somewhat confusing at this point. The defect seen at the L4-5 level on the new myelogram most likely represents a new rupture of the disc at this level. Richard, of course, denies any new injury. The absence of muscle atrophy in his left leg, in spite of the EMG findings, would also go along with a more recent lesion of this particular nerve root. However, the other possibilities that need to be considered are a reherniation of a fragment of disc material from the previously operated level with displacement proximally or a small epidural abscess in the upper level. As my previous notes have indicated, Richard did have somewhat of a 'stormy' postoperative period after his surgery and there was clinical suspicion that he may have had a disc space infection though we could never prove this on the bone scan. One other remote possibility is a ruptured L4-5 disc secondary to the severe coughing bouts that Richard had when he developed a pneumonia following his previous surgery. Richard has appeared to have a significant functional overlay to his symptoms as well and this has further complicated a clear picture of what is, in fact, going on. In any case, I feel, in view of the EMG and myelographic findings, Richard does need to have the L4-5 level explored in the very near future."

Dr. Shaw telephoned SAIF and requested authorization for surgery. SAIF asked that surgery be delayed until a second opinion could be obtained. By certified mail, it sent claimant a notice of an appointment for him to be examined by Orthopaedic Consultants, but the notice was returned "unclaimed." Claimant's attorney was also notified of the appointment, but claimant did not keep it.[1] On July 10, 1981, SAIF denied claimant's application to reopen his claim. He requested a hearing, which was held on October 13, 1981. He testified that his right-leg pain was

---

[1] SAIF claims that claimant's failure to respond to its request for an independent examination provides an independent ground for denial of the claim under ORS 656.325. Because of our disposition of the case, we do not reach that question.

alleviated by his first surgery but that the pain immediately switched to and continued in his left leg. He stated that he had not suffered any back injuries since his surgery.

This is a case that requires expert medical opinion to sustain claimant's burden of proof on the issue of causation. *See Larson v. State Ind. Acc. Com.,* 209 Or 389, 399, 307 P2d 314 (1957). For the necessary medical opinion, claimant relies almost entirely on this statement contained in a letter dated August 14, 1981, to his attorney from Dr. Shaw:

> "As I have indicated to you in my previous letter, [claimant's] case has been quite complicated but if an injury can be ruled out after he had his lumbar discectomy on January 18, 1980, his ongoing problems would have to be related, by history, to his surgery or postoperative period."

Claimant's argument is that, because his testimony that he has not had any injuries to his back since his surgery "rules out" an intervening injury, the condition of Dr. Shaw's opinion on causation is satisfied.

Claimant has not met his burden of proof on causation. Dr. Shaw's opinion of August 14 standing by itself is but an expression of uncertainty. Whether an intervening injury is the cause of claimant's new disc problem is the very issue on which compensability turns, but on this issue Dr. Shaw is silent in his letter of August 14. Moreover, Dr. Shaw's opinion of June 18, which is a more detailed discussion of claimant's situation than that of August 14, does not support compensability. That opinion states that the defect at the L4-5 level "most likely represents a new rupture" and that the "absence of muscle atrophy in his left leg, in spite of the EMG findings, would also go along with a more recent lesion of this particular nerve root." Dr. Shaw discusses three possible ways in which the new defect could be causally related to the early surgery: a reherniation of a fragment of disc material from the previously operated level with displacement proximally, an epidural abscess from disc space infection resulting from the surgery or a rupture resulting from claimant's coughing bout during his pneumonia. However, Dr. Shaw discusses these only in terms of possibilities and in fact discounts the

latter two. We thus have no expert medical opinion affirmatively attributing claimant's current condition to his industrial injury and the consequent surgery as more than a possibility. That claimant suffered pain in his left leg immediately after his surgery is circumstantial evidence of causation but is insufficient to carry claimant's burden of proof. Claimant has failed to show that his present back problem is more likely than not connected to his earlier compensable injury.[2]

Affirmed.

---

[2] The Board relied in part on our statement in *Hamel v. Tri-Met,* 54 Or App 503, 508, 635 P2d 662 (1981), that "relatively minor activity can trigger the herniation of a vertebral disc." That statement was made in reliance on medical evidence that was presented in that case, not as a matter of judicial notice, and we caution the Board against use in one case of evidence produced in another.