In the Matter of the Compensation
of Harry A. Westmoreland, Claimant.

**WESTMORELAND,**
*Petitioner,*

*v.*

**IOWA BEEF PROCESSORS,**
*Respondent.*

(82-07779; CA A29764)

690 P2d 1105

Milo Pope, Mt. Vernon, argued the cause for petitioner. With him on the brief was Kilpatricks & Pope, Mt. Vernon.

John M. Pitcher, Portland, argued the cause for respondent. With him on the brief was Roberts, Reinisch & Klor, Portland.

Before Gillette, Presiding Judge, and Young and Rossman, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant seeks review of a Workers' Compensation Board order denying him benefits for an allegedly work-related injury to his upper back. The referee had granted benefits. We reverse the Board and reinstate the referee's order.

According to claimant, he hurt his upper back and neck while cranking the landing gear on a loaded trailer he was connecting to his tractor preparatory to driving back to his home base in Pendleton. He reported the incident to his dispatcher on arrival in Pendleton and soon afterwards went to a hospital emergency room. His physicians found tenderness to the left of his upper spine and adjacent to his right scapula and a decrease in his right hand grip. They diagnosed an upper back strain and hospitalized claimant. After treatment with a cervical collar, analgesics and muscle relaxants, claimant was able to return to work.

Claimant's description of his injury is straightforward and, at first appearance, the Board's action is surprising. The problem is that claimant's credibility was severely damaged by evidence at the hearing. In a conversation with an insurance investigator while he was in the hospital, claimant denied having had a previous neck injury. At the hearing, he denied having seen any doctors for treatment of problems in his upper back or neck. However, he admitted on cross-examination that he had, in fact, seen three chiropractors in the month before the claimed injury for treatment of neck problems. According to the chiropractors' notes, and according to his own written description to one of them, his complaints included pain between his shoulder blades, the precise area he claimed to have injured at work.

The referee awarded compensation despite his recognition of claimant's poor credibility. He also awarded attorney fees but no penalty. The Board, one member dissenting, found that claimant had lied, that he had not given adequate information to his treating physicians after the injury and that there was inadequate evidence in the record relating his injuries to the incident at work.

We find that claimant was injured as he claimed. Although he may have suffered an aggravation of a previous non-compensable injury rather than a new injury, he is

entitled to benefits in either case. Claimant's lies apparently came from his fear that his previous injury would prevent his being compensated for the work-related injury. Although his lies make his testimony as a whole less trustworthy, they do not deprive it of all value. Other evidence and the sequence of events adequately support his version of how he was hurt.

Claimant apparently was in good condition when he began his shift, which involved a round trip from Pendleton to Boise. When he returned from the trip he told his dispatcher that he had hurt his neck. He then went home and his fiané́e took him to the hospital, where he had clear symptoms of such an injury. His injury must have occurred during his shift, and his description of how it happened makes sense. We do not require expert medical testimony to relate his neck and upper back pain to the activity of turning a stiff crank on a trailer's landing gear. He was injured in precisely the place and way we would expect a person to be injured who was doing what he says he was doing.

■    There is no need for expert medical evidence when the connection between the work and the injury is not complex. In *Uris v. Compensation Department,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967), the Supreme Court listed several factors to consider in determining if the connection is complex. They include whether the injury or its cause is complicated, whether there is an immediate appearance of symptoms, whether the injury was promptly reported to a superior and to a physician and whether the worker was previously in good health and free from disability of the kind involved. *See also Madewell v. Salvation Army,* 49 Or App 713, 717, 620 P2d 953 (1980). Claimant's injury passes all of these tests, except possibly the last. He testified that his chiropractic treatment involved his neck popping out and that that was a different problem from the one he experienced after the injury. The referee believed his testimony on this point despite claimant's poor credibility. We find that claimant has sufficiently shown a connection between his work and the injury.[1] *See also Garbutt v. SAIF,* 297 Or 148, 681 P2d 1149 (1984).

---

[1] We have noted that the *Uris* tests may be seen as descriptions of how we function as factfinders rather than as firm rules of law. *Hatfield v. SAIF,* 46 Or App 279, 282, 611 P2d 345 (1980). The important thing is that we be able to determine that causation is not complex; the *Uris* tests aid us in making that determination.

Our holding necessarily rejects the Board majority's concern with claimant's failure to give a full and accurate history to his physicians, a concern that we think led the Board astray in its analysis. If claimant's physicians had had a more accurate history, the most they could have done would be to determine that claimant's injury was an aggravation of a previous injury; there is nothing in the record which indicates that they would have denied that the reinjury was any injury at all.

Reversed; the referee's order is reinstated.